FIFTH DIVISION
March 2, 2007

No. 1-05-1417

| | | |
|---|---|---|
| JERRY W. JONES, Individually and as Independent, Administrator of the Estate of Jerry Jones, Jr., a Deceased Minor; LADONNA S. JONES, an Individual; DANTE JONES, a Minor, by his Guardians Jerry W. Jones and LaDonna S. Jones; DONOVAN JONES, a Minor, by his Guardians, Jerry W. Jones and LaDonna S. Jones, | ) ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 98 CH 11186 |
| COUNTRY MUTUAL INSURANCE COMPANY, an Insurance Company Licensed to Write Insurance in Illinois, | ) ) ) | Honorable Lee Preston, Judge Presiding. |
| Defendant-Appellant. | ) | |

JUSTICE GALLAGHER delivered the opinion of the court:

Defendant, Country Mutual Insurance Company, appeals from an order of the trial court denying its summary judgment motion and granting summary judgment in the amount of $100,000 each to plaintiffs, the estate of Jerry Jones, Jr., and Dante Jones. The trial court concluded that two separate insurance policies issued by Country Mutual to two different parties could be stacked for the purposes of underinsured motorist coverage. For the reasons that follow, we reverse and remand for further proceedings consistent with this order.

BACKGROUND

In August 1996, a vehicle driven by LaDonna Jones was involved in an accident with a vehicle driven by Maria Salcedo. The vehicle driven by LaDonna Jones contained several passengers, including her sons, Jerry Jones, Jr., Dante Jones and Donovan Jones. Jerry Jones, Jr. died as a result of the accident, and Dante Jones suffered severe injuries. Those are the only two claims relevant to this appeal. Plaintiffs, Jerry W. Jones, as independent administrator of the estate of Jerry Jones, Jr., and Dante Jones, a minor, by his guardians Jerry W. Jones and LaDonna Jones, each received the $100,000 maximum per-person limit from Salcedo's insurance policy.

At the time of the accident, the vehicle driven by LaDonna Jones was leased by Isaiah Harrison. Harrison carried underinsured motorist coverage for the vehicle issued by Country Mutual in the amount of $100,000 per person and $300,000 per occurrence (Harrison Policy). Jerry W. Jones and LaDonna Jones also carried an insurance policy issued by Country Mutual which provided for underinsured motorist coverage in the amount of $100,000 per person and $300,000 per occurrence (the Jones Policy). Both the Harrison Policy and Jones Policy contain the same relevant terms and conditions.

Plaintiffs contend that each policy's $100,000 underinsured motorist coverage limits may be stacked resulting in a total of $200,000 in underinsured motorist coverage for each plaintiff. Defendant asserts that the policies may not be stacked and that each policy's $100,000 limit is offset by the $100,000 payment received from the underinsured motorist's insurer, leaving $0 left in underinsured motorist coverage on each policy.

1-05-1417

After a long history, the trial court granted plaintiffs' motion for summary judgment in the amount of $100,000 to each plaintiff, concluding that the Jones Policy and the Harrison Policy could be stacked for the purposes of underinsured motorist coverage. Specifically, the trial court stated that the antistacking language in the respective policies only applied to the insured and relatives of the insured. Therefore, the court reasoned, since the policies originated from two separate households, where the insureds were unrelated to one another by blood or marriage, the policies do not expressly prohibit stacking. Thus, the trial court decided that plaintiffs were entitled to $200,000 per person in underinsured motorist coverage. Since each plaintiff had already received $100,000 from Salcedo's insurer, the trial court entered a judgment on behalf of each plaintiff for $100,000 ($200,000 in underinsured motorist coverage offset by the $100,000 payment already received from Salcedo's insurer). Defendant, Country Mutual Insurance Company, now appeals from the order of the trial court denying its summary judgment motion and granting summary judgment in the amount of $100,000 to each plaintiff.

ANALYSIS

The construction of an insurance policy provision is a question of law that can be properly decided on a motion for summary judgment. We review a grant of summary judgment *de novo*. *State Farm Mutual Automobile Insurance Co. v. Coe*, 367 Ill. App. 3d 604, 607, 855 N.E.2d 173, 176 (2006).

An insurance policy is a contract and, as such, is subject to the same rules of interpretation that govern the interpretation of contracts. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17, 823 N.E.2d 561, 564 (2005). Consequently, our primary objective is

3

to determine and give effect to the intent of the parties, as expressed in the policy language. *Hobbs v. Hartford Insurance Co.*, 214 Ill. 2d at 17. If the policy language is unambiguous, the policy will be applied as written unless it conflicts with public policy. *Hobbs v. Hartford Insurance Co.*, 214 Ill. 2d at 17. Where ambiguous, and therefore subject to more than one reasonable interpretation, policy terms that limit an insurer's liability will be construed in favor of the insured. *Hobbs v. Hartford Insurance Co.*, 214 Ill. 2d at 17.

The trial court's conclusion that the Harrison and Jones policies may be stacked is based on the following language in the identical policies:

"General Policy Conditions

8. Other Vehicle Insurance with Us. If this policy and any other vehicle insurance policy issued to *you or a relative* by one of our companies apply to the same accident, the maximum limit of our liability under all the policies will not exceed the highest applicable limit of liability under any one policy." (Emphasis added.).

The respective policyholders are unrelated according to the definition of "relative" in both insurance policies. The trial court therefore concluded that not only does this antistacking provision not apply to the Jones and Harrison policies, but that the policies therefore provide for stacking. We disagree.

The fact that the respective policies were issued to unrelated individuals renders the above policy provision inapplicable to the present case. We, therefore, must look to other

1-05-1417

language in the policies for guidance. The relevant language as to the underinsured motorist coverage in both the Harrison and Jones policies provides as follows:

> 2. "Limits of Liability. The Uninsured - Underinsured motorists limits of liability shown on the declarations page apply as follows:
>
>> e. The most we will pay under Underinsured motorists Coverage, Coverage U, to any one person is the lesser of:
>>
>>> (1) the difference between the 'each person' limit of this coverage as shown on the declarations page for this coverage and the amount paid to the insured by or on behalf of persons or organizations who may be legally responsible for the bodily injury caused by the underinsured motor vehicle; or
>>>
>>> (2) the difference between the amount of the insured's damages and the amount paid to the insured by or on behalf of persons or organizations who may be legally responsible for the bodily injury caused by an underinsured motor vehicle."

The "each person" limit for underinsured motorist coverage under both the Harrison and Jones policies as shown on the declarations page is $100,000. Each plaintiff received $100,000 from Salcedo's insurer, an amount equal to the per-person limit for bodily injury coverage on Salcedo's insurance policy. Thus, under (1) above, the difference between the "each person"

5

limit of this coverage and the amount paid to each plaintiff is $0 ($100,000 minus $100,000). Accordingly, plaintiffs effectively have no underinsured motorist coverage since the most that Country Mutual is obligated to pay under either policy is $0.

Despite the above policy language, plaintiffs, nevertheless, assert that the $100,000 underinsured motorist coverage limits should be stacked for total coverage of $200,000 before being offset by the $100,000 payment received from Salcedo's insurer. However, assuming, *arguendo*, that the $100,000 underinsured motorist coverage limits should be stacked, Country Mutual would still be allowed to offset each $100,000 policy limit by the $100,000 payment from Salcedo's insurer before the amounts are stacked. *Kapinus v. State Farm Mutual Automobile Insurance Co.*, 317 Ill. App. 3d 185, 188, 738 N.E.2d 1003 (2000). As a result, each policy, containing $0 in underinsured motorist coverage, would be stacked for a total of $0 in coverage.

In *Kapinus*, plaintiff was in an automobile accident and received $50,000 from the underinsured motorist's insurance company. *Kapinus v. State Farm Mutual Automobile Insurance Co.*, 317 Ill. App. 3d at 186. Plaintiff was allowed to stack her two underinsured motorist coverage policies issued by the same insurer with $100,000 per-person limits. *Kapinus v. State Farm Mutual Automobile Insurance Co.*, 317 Ill. App. 3d at 186. Plaintiff sought to limit the aggregate setoff under the underinsured motorist clauses of the two policies to $50,000. *Kapinus v. State Farm Mutual Automobile Insurance Co.*, 317 Ill. App. 3d at 186. There, the court interpreted a portion of section 143a-2(4) of the Illinois Insurance Code which states:

> "For the purpose of this Code the term 'underinsured motor vehicle' means
>
> a motor vehicle whose ownership, maintenance or use has resulted in bodily

injury or death of the insured, as defined in *the policy*, and for which the sum of the limits of liability under all bodily injury liability insurance policies *** is less than the limits for underinsured coverage provided the insured as defined in *the policy* at the time of the accident." (Emphasis added.). 215 ILCS 5/143a-2(4) (West 1998).

The *Kapinus* court reasoned that section 143a-2(4) defines the limits of liability on a per-policy, not a per-insurer, basis. *Kapinus v. State Farm Mutual Automobile Insurance Co.*, 317 Ill. App. 3d at 188. Thus, the court concluded that the insurer may offset each $100,000 underinsured motorist coverage policy limit by the $50,000 received from the underinsured driver's insurer. *Kapinus v. State Farm Mutual Automobile Insurance Co.*, 317 Ill. App. 3d at 188. Accordingly, the insured is allowed to stack the amount remaining *on each policy* after the amount recovered from the underinsured motorist's insurer is subtracted from the underinsured motorist coverage liability limit. *Kapinus v. State Farm Mutual Automobile Insurance Co.*, 317 Ill. App. 3d at 188. Therefore, in *Kapinus*, the insurer's total liability for underinsured motorist coverage was $100,000, not $150,000. *Kapinus v. State Farm Mutual Automobile Insurance Co.*, 317 Ill. App. 3d at 188.

Likewise, in the present case, even if stacking is allowed, the amount of underinsured motorist coverage would be determined on a per policy basis before the policies are stacked. Here, each policy's $100,000 underinsured motorist coverage limit would be offset by the $100,000 payment received from Salcedo's insurer, resulting in $0 in underinsured motorist coverage. Consequently, stacking the policies would also result in total underinsured motorist coverage of $0.

Plaintiff argues erroneously that *Kapinus* is inapposite to the present case because, there, the court interpreted an amended version of section 143a-2(4), not the previous version applicable to the present case.[1]  However, the amendment to section 143a-2(4) is irrelevant to the *Kapinus* holding and has no bearing on the present case, because in both *Kapinus* and the instant case, the amount recovered from the underinsured motorist's insurer by plaintiff(s) was equal to the amount of the underinsured motorist's bodily injury liability insurance limit.  *Kapinus* is therefore applicable to this case despite the fact that it was decided under the amended version of section 143a-2(4).

Nevertheless, plaintiff asserts that the trial court correctly relied on *Cummins v. Country Mutual Insurance Co.*, 178 Ill. 2d 474, 687 N.E.2d 1021 (1997), in which the Illinois Supreme Court interpreted the earlier version of section 143a-2(4).  In *Cummins*, the plaintiff, who had underinsured motorist coverage in the amount of $50,000, suffered injuries in excess of $50,000. *Cummins v. Country Mutual Insurance Co.*, 178 Ill. 2d at 476.  The underinsured motorist's

---

[1]Both versions of the statute provide that "[t]he limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the undersinsured motor vehicle." 215 ILCS 5/143a-2(4)(1998), Ill. Rev. Stat. 1987; ch. 73, par. 755a-2(3).  The only difference between the two versions of the statute is that the 1997 amendment added the following sentence: "However, the maximum amount payable by the underinsured motorist coverage carrier shall not exceed the amount by which the limits of the underinsured motorist coverage exceeds the limits of the bodily injury liability insurance of the owner or operator of the underinsured motor vehicle."  215 ILCS 5/143a-2(4) (West 1998).

bodily injury liability limit was also $50,000. *Cummins v. Country Mutual Insurance Co.*, 178 Ill. 2d at 477. However, plaintiff only recovered $35,000 from the underinsured motorist's insurer. *Cummins v. Country Mutual Insurance Co.*, 178 Ill. 2d at 477. There, the court held that plaintiff was entitled to recover $15,000 in underinsured motorist benefits to "*fill the gap.*" (Emphasis added.) *Cummins v. Country Mutual Insurance Co.*, 178 Ill. 2d at 486.

Here, there is no gap between the underinsured motorist coverage limit and the amount actually recovered from the underinsured motorist. Though not explicitly stated, the trial court apparently decided that, under *Cummins*, each plaintiff was entitled to fill the gap between the *stacked* coverage limit of $200,000 and the $100,000 received from the underinsured motorist's insurer. However, as discussed earlier, after the $100,000 payment was recovered from the underinsured motorist's insurer, the underinsured motorist coverage liability limit under both the Harrison policy and the Jones policy was actually $0. Furthermore, even if the $100,000 limits were allowed to be stacked, according to *Kapinus*, defendant could offset each $100,000 policy limit by the $100,000 already received by each plaintiff, resulting in $0.

Both plaintiffs and the trial court relied on *Pekin Insurance Co. v. Estate of Robin Goben*, 303 Ill. App. 3d 639, 707 N.E.2d 1259 (1999), as support for allowing stacking of the policies. *Pekin*, however, is inapplicable to the present case. There, as in *Cummins*, the amount recovered by plaintiff was *less than* the underinsured motorist coverage policy limit. *Pekin Insurance Co. v. Estate of Robin Goben*, 303 Ill. App. 3d at 641. There was a gap. Furthermore, the facts in Pekin are even more remote, since the court's decision to allow stacking turned on the fact that the underinsured motorist limit was set forth two times, once for each vehicle, on the declarations page, and was therefore ambiguous. *Pekin Ins. Co. v. Estate of Robin Goben*, 303 Ill. App. 3d at

1-05-1417

648. No similar facts exist in the present case, nor is there any such ambiguity in the policies at issue here.

Finally, we find meritless plaintiff's argument that pursuant to Supreme Court Rule 341(g) (188 Ill. 2d R. 341(g)), we should disregard certain arguments set forth by Country Mutual in its reply brief. Plaintiff asserts that Country Mutual waived certain arguments by failing to make them in its opening brief. Plaintiff misunderstands Rule 341(g), and the purpose of the reply brief. Rule 341(g) states, "The reply brief, if any, shall be confined strictly to replying to arguments presented in the brief of the appellee and need only contain Argument." 188 Ill. 2d R. 341(g). Therefore, Country Mutual is allowed to reply to plaintiff appellee's arguments regardless of whether those arguments were raised in Country Mutual's opening brief.

For the reasons stated, we reverse the trial court's judgment and remand for further proceedings consistent with this order.

Reversed and remanded.

TULLY and O'MARA FROSSARD, JJ., concur.