# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Katz v. State Farm Mutual Automobile Insurance Co.*, 2012 IL App (1st) 110931

---

| | |
|---|---|
| Appellate Court Caption | PHILLIP R. KATZ, Plaintiff-Appellant, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee. |
| District & No. | First District, Second Division<br>Docket No. 1-11-0931 |
| Filed | February 7, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from an automobile accident where plaintiff was insured under three identical policies issued by defendant, but he was driving a vehicle owned by his employer and insured by a second insurer and the other vehicle happened to be insured by defendant, the trial court properly rejected plaintiff's contention that he was entitled to additional underinsured motorist benefits under the three policies issued to him, since the trial court properly found plaintiff's insurer was not plaintiff's excess underinsurer and the trial court correctly calculated the applicable setoffs to plaintiff's underinsured motorist benefits, and further, defendant's conduct in denying plaintiff's claims was not so unreasonable and vexatious that plaintiff was entitled to damages under section 155 of the Insurance Code. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-08408; the Hon. Richard J. Billik, Jr., Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal    David J. Fitzpatrick & Associates, Ltd., of Chicago (David J. Fitzpatrick, of counsel), for appellant.

Taylor Miller LLC, of Chicago (John R. Adams, of counsel), for appellee.

Panel    JUSTICE HARRIS delivered the judgment of the court, with opinion. Presiding Justice Quinn and Justice Connors concurred in the judgment and opinion.

# OPINION

¶ 1    Here we are called upon to determine whether the circuit court properly granted summary judgment in favor of defendant State Farm Mutual Automobile Insurance Company (State Farm). Plaintiff, Phillip R. Katz, filed an amended complaint against State Farm claiming that he was owed additional underinsured motorist benefits under three insurance policies issued to him by State Farm. At issue is: (1) whether State Farm is Katz's excess underinsurer; (2) whether the circuit court properly calculated the applicable setoffs to Katz's underinsured motorist benefits; and (3) whether State Farm's conduct in denying Katz's claims of additional underinsured motorist benefits was unreasonable and vexatious such that Katz is entitled to damages under section 155 of the Illinois Insurance Code. 215 ILCS 5/155 (West 2008). We hold that State Farm is the only underinsurer and not an excess underinsurer. The circuit court properly calculated the applicable setoffs to Katz's underinsured motorist benefits. We do not need to address whether State Farm's conduct in denying Katz's claims of additional underinsured motorist benefits warrants further damages because State Farm is not liable to Katz for any further underinsured motorist benefits

¶ 2              JURISDICTION

¶ 3    On March 18, 2011, the circuit court granted State Farm's motion for summary judgment on Katz's amended complaint for declaratory judgment and denied Katz's cross-motion for summary judgment. On March 25, 2011, Katz timely filed his notice of appeal. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered below. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008).

¶ 4              BACKGROUND

¶ 5    The facts of this appeal are undisputed. On February 26, 2008, Katz was involved in an automobile accident. At the time of the accident, Katz was the named insured on three automobile policies issued by State Farm under policy numbers 360 9364-F24-13J; 360

9363-E15-13K, and 153 4222-F08-13. The relevant provisions of these policies are identical and each included underinsured motorist benefit coverage limits of $250,000 per person.[1] At the time of the incident, Katz was driving a vehicle owned by his employer and insured by Sentry Select Insurance Company (Sentry). The underinsured motorist coverage under the Sentry policy included coverage limits of $50,000 per person. The other vehicle involved in the accident, driven by Gregory Belt, was also insured by State Farm and contained a primary liability policy limit of $100,000 per person.

¶ 6    Katz filed the underlying personal injury lawsuit against Belt in the circuit court of Du Page County. In settlement of the underlying action, State Farm tendered its primary liability policy limits of $100,000 under Belt's policy to Katz. The settlement order allocated 60%, or $60,000, of the $100,000 settlement amount to Katz and 40%, or $40,000, to Katz's spouse in compensation for her loss of consortium claim.

¶ 7    Katz also received a workers' compensation benefit, of which $47,654.08 was paid to Katz and was available for setoff.[2]

¶ 8    Sentry paid Katz $2,345.92 under its policy. Although Sentry is not part of this appeal, it appears from the record that Sentry applied a setoff for the workers' compensation benefits Katz received. Sentry's policy limit for underinsured motorist benefits was $50,000. After applying the workers' compensation setoff of $47,654.08 to the policy limits, $2,345.92 of underinsurance motorist benefits remained to be tendered to Katz.

¶ 9    State Farm, under the policies it issued to Katz, paid him $161,876 in underinsured motorist benefits. This amount is $88,124 less than State Farm's underinsured motorist coverage limits of $250,000 under the polices issued to Katz.

¶ 10    On May 3, 2010, Katz filed his amended complaint for declaratory judgment and attached as exhibits the three policies issued to him by State Farm. In his amended complaint, Katz characterized Sentry as the primary underinsurance policy and State Farm as the excess underinsurance policy. Katz stated that Sentry had already tendered him the benefits it owed him, after it applied a set-off for Katz's workers' compensation benefits. Katz sought to have State Farm pay him "the remaining benefit available of $88,124 arising out of the occurrence of February 26, 2008." Katz pointed to the following policy language in the State Farm policy to support his position:

> "If There Is Other Underinsured Motor Vehicle Coverage–Coverage W
> ***
>
> 2. Subject to item 1 above, any coverage applicable under this policy shall apply:
>
> a. on a primary basis if the **insured** sustains **bodily injury** while **occupying your car**, or while not **occupying** a motor vehicle or trailer.

---

[1]We will refer to the three State Farm policies collectively as the State Farm policy because the relevant provisions are identical and Katz has not argued before this court or the circuit court that the underinsured motorist coverage of the three policies stacks.

[2]The parties do not dispute that this is the proper amount of workers' compensation benefits available for setoff. The parties only dispute who is able to apply the setoff.

b. on an excess basis if the ***insured*** sustains ***bodily injury*** while ***occupying*** a vehicle other than ***your car***." (Emphases in original.)

Katz also sought attorney fees, costs, and statutory penalties.

¶ 11    On July 7, 2010, State Farm filed its motion for summary judgment pursuant to section 2-1005 of the Illinois Code of Civil Procedure (Code). 735 ILCS 5/2-1005 (West 2008). In its motion, State Farm argued that Katz did not have an underinsured motorist claim under the Sentry policy because the primary liability limit on Belt's car in the underlying lawsuit was more than the underinsured motorist limits of the Sentry policy. Specifically, the primary liability limit for the insurance on Belt's car was $100,000, whereas the Sentry policy contained a $50,000 underinsured motorist limit. State Farm argued that under the Sentry policy, Katz did not have a claim for underinsured motorist coverage. State Farm relied upon the following language in the Sentry policy, which it attached to its motion:

"A. COVERAGE

1. We will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'underinsured motor vehicle.' "

The policy defined the term "underinsured motor vehicle" as:

" 'Underinsured motor vehicle' means a land motor vehicle or 'trailer' for which the sum of all liability bonds or policies at the time of an 'accident' provides at least the amounts required by the applicable law where a covered 'auto' is principally garaged but their limits are less than the limit of this coverage."

State Farm argued further that it did not know why Sentry paid Katz $2,345.92, and described this payment as a "windfall" for Katz. State Farm noted that "the fact that Mr. Katz received a windfall can have no effect on State Farm's rights or obligations." Therefore, State Farm argued that it is the only applicable underinsurance policy because Sentry's policy did not apply.

¶ 12    In its motion for summary judgment, State Farm also contended that it had already paid more than it owed under its own policy with Katz. State Farm relied upon the following language in its own policy in making its argument:

"**Coverage W**

1. The amount of coverage is shown on the declarations page under 'limits of liability-W-Each Person, Each Accident.' Under 'Each Person' is the amount of coverage for all damages due to ***bodily injury*** to one person. '***Bodily injury*** to one ***person***' includes all injury and damages to others resulting from this ***bodily injury***, and all emotional distress resulting from this ***bodily injury*** sustained by other ***persons*** who do not sustain ***bodily injury.*** Under 'Each Accident' is the total amount of coverage, subject to the amount shown under 'Each Person', for all damages due to ***bodily injury*** to two or more ***persons*** in the same accident.

2. Any amount paid or payable to or for the ***insured*** under any workers' compensation, disability benefits, or similar law shall reduce the amount payable under this coverage. The reduction may be taken only once and shall first be applied to the

-4-

amount payable by any policy providing coverage on a primary basis. Any remaining reduction shall then be applied to the amount payable by any policy providing coverage on an excess basis. However, social security disability benefits shall not be used to reduce the amount payable under this coverage.

3. The underinsured motor vehicle coverage shall be excess over and shall not pay again any medical expenses paid under the medical payments coverage.

4. The limits of liability are not increased because:

a. more than one vehicle is insured under this policy;

b. more than one *person* is insured at the time of the accident; or

c. more than one *underinsured motor vehicle* is involved in the same accident.

5. a. The most we will pay any one *insured* is the lesser of:

(1) the amount which the 'each person' limit of this coverage exceeds the sum of the 'each person' limits of liability of all bodily injury liability insurance coverages that apply to the accident; or

(2) the amount by which the *insured's* damages for *bodily injury* exceed the sum of the 'each person' limits of liability of all bodily injury liability insurance coverages that apply to the accident." (Emphases in original.)

¶ 13    State Farm contended that under clause "5 a.(1)," $100,000 must be subtracted from the $250,000 policy limit. The $100,000 setoff represents the settlement of the underlying action.

¶ 14    State Farm also argued that an additional setoff of $47,654.08 applied because "clause 2" of its policy states that workers' compensation benefits shall reduce the amount of underinsured motorist benefits available. According to State Farm, Katz was entitled to receive $102, 345.92 under the underinsured motorist policy. This conclusion represents the total underinsurance motorist benefit after subtracting both the $100,000 Katz received from the Belt settlement and the $47,654.08 in workers' compensation benefits Katz received from the $250,000 policy limit. State Farm stressed that since it had already paid Katz $161,876, it "owes him nothing."

¶ 15    On November 18, 2010, Katz filed his cross-motion for summary judgment and response to State Farm's motion for summary judgment. In his motion, Katz maintained that Sentry was the primary underinsurer and State Farm was the excess underinsurer. Katz argues that both polices may be stacked so that he is able to claim $50,000 worth of underinsurance benefits from Sentry and $250,000 worth of underinsurance benefits from State Farm. According to Katz, Sentry was the primary underinsurer and properly first applied the setoff of Katz's workers' compensation benefits of $47,654.08 before tendering to him $2,395.92 under its policy. Katz argued that because Sentry had already taken the setoff for Katz's workers' compensation benefits, State Farm was unable to do so.

¶ 16    On November 30, 2010, State Farm filed its reply in support of its motion for summary judgment. In its reply, State Farm argued that the section of its policy that addresses other underinsured motor vehicle coverage, and which Katz's argument is based on, is not applicable in this case. State Farm maintained that it is the only underinsurance provider because the liability limits of Belt's policy were greater than the limits of Sentry's

underinsurance policy limits. State Farm also stressed that Katz's calculation of the applicable setoff disregarded the $40,000 of the Belt settlement allocated to Katz's spouse. State Farm argued that Katz's spouse was an insured under the policy. In support if its position, State Farm pointed to the following language of its policy to show Katz's spouse was an insured under the policy and the proper amount to set off:

"**Who Is An Insured–Coverages U, U1 and W Insured**–means the ***person*** or ***persons*** covered by uninsured motor vehicle or underinsured motor vehicle coverages. With respect to ***bodily injury***, this is:

1. the first ***person*** named in the declarations;

2. his or her ***spouse***;

3. their ***relatives***; and

4. Any other ***person*** while ***occupying:***

a. ***your car***, a ***temporary substitute car***, a ***newly acquired car*** or a trailer attached to such a ***car***. Such vehicle has to be used within the scope of the consent of ***you*** or ***your spouse***; or

b. a ***car*** not owned by or leased to ***you***, ***your spouse*** or any other ***relative***, or a trailer attached to such a ***car***. It has to be driven by the first ***person*** named in the declarations or that ***persons's spouse*** and within the scope of the owner's consent.

\*\*\*

5. any ***person*** entitled to recover damages because of ***bodily injury*** to an ***insured*** under 1 through 4 above." (Emphases in original.)

State Farm argued that Katz was an insured under "clause 1" above and that Katz's spouse is an insured under "clause 5" above due to her loss of consortium claim after the bodily injury suffered to an insured, her husband.

¶ 17    On December 22, 2010, Katz filed a reply to State Farm's response, in which he maintained that Sentry was the primary underinsurer. Katz also argued that his spouse's loss of consortium claim cannot be claimed by State Farm as a setoff because the State Farm policy does not unambiguously allow it to do so.

¶ 18    On March 18, 2011, the circuit court granted State Farm's motion for summary judgment and denied Katz's motion for summary judgment. The court found that the relevant provisions in both the State Farm policy and the Sentry policy contain unambiguous language showing that Sentry cannot be considered an underinsurer. Specifically, the court found that Sentry could not be considered Katz's underinsurer because its underinsurance policy limit of $50,000 was less than the primary liability coverage of Belt's vehicle, which was $100,000. The court found that because State Farm was the only underinsurance policy, the provisions in the State Farm policy that Katz relies upon to argue that State Farm is the excess underinsurer are not applicable.

¶ 19    The court also found that State Farm was entitled to set off the amount of $100,000, which represented the full amount of the primary liability limit of Belt's vehicle in the underlying action. Included in this amount was the $40,000 allocated to Katz's spouse for

her loss of consortium claim. The court concluded that Katz's spouse's "loss of consortium claim *** that was settled in the underlying action is derivative in nature resulting from the 'Bodily Injury' of [Katz]." The court noted that at the hearing on the motion, State Farm indicated Katz's spouse "would not have been precluded from submitting a claim derivatively under the State Farm Policies for a loss of consortium," but that she did not do so and is not even a party to this case.

¶ 20    In addition to the $100,000 setoff from the Belt policy, the court found that State Farm was also entitled to a setoff of $47,654.08, for Katz's workers' compensation benefits because State Farm was the only underinsurer. After applying the setoffs of $100,000 and $47,654.08 to the underinsured motorist limits of $250,000, as found in the State Farm policy, the court concluded Katz was entitled to $102,345.92 in underinsured motorist benefits under the State Farm policy. Therefore, the circuit court ordered that "[State Farm] has no further liability to [Katz] for [underinsured motorist] benefits under its Policies." The circuit court also found that because it found that State Farm had no further liability to Katz, damages pursuant to section 155 of the Insurance Code (215 ILCS 5/155 (West 2008)) were not appropriate.

¶ 21    On March 25, 2011, Katz timely filed his notice of appeal. This appeal followed.

¶ 22                                    ANALYSIS

¶ 23    Before this court, Katz argues that he is entitled to be paid by State Farm an additional $88,124 in underinsurance benefits. He contends that State Farm should be considered the excess underinsurer as opposed to the primary underinsurer. According to Katz's calculations, Sentry, as primary underinsurer, provided $50,000 worth of underinsurance benefits under its policy. State Farm, as the excess underinsurer, provided up to $250,000 worth of excess underinsurance. Katz argues that aggregating or "stacking" the two benefits together provides him with an underinsurance benefit of $300,000. Katz maintains that any setoffs applied to the underinsurance benefits should first be applied to Sentry, as the primary underinsurer, and then any extra setoff applied to State Farm's policy, as the excess underinsurer. Katz calculates the available setoff from his workers' compensation claim as $47,654.08, which he argues should only be applied as a setoff by Sentry. According to Katz, because Sentry's underinsurance policy contains a $50,000 underinsurance benefit and the workers' compensation setoff must first be applied by the primary underinsurer, there was no setoff available for State Farm. Accordingly, Katz contends because State Farm had already paid him $161,876, he believes he is entitled to the rest of the $250,000 underinsurance benefit provided by State Farm, which would total $88,124.[3] Katz also argues that he is entitled to additional damages based on State Farm's alleged "unreasonable and vexatious conduct" under section 155 of the Insurance Code. 215 ILCS 5/155 (West 2008).

¶ 24    State Farm argues before this court that the Sentry policy provided no underinsured

---

[3]Despite State Farm's position that it owes Katz only $102,345.92 in underinsurance benefits, it had previously issued Katz two payments, one for $150,652 and another for $11,224 for a total of $161,876.

motorist coverage for Katz's accident, and as support for its position, it relies on both the relevant language of the Sentry policy and the statutory definition of underinsured motor vehicle as found in section 143a-2(4) of the Insurance Code. 215 ILCS 5/143a-2(4) (West 2008). Because Sentry does not provide any underinsured motorist coverage, State Farm contends that it is the only underinsurer. According to State Farm, Katz is only entitled to receive $102,345.92 in underinsured motorist benefits from the polices it issued to Katz. State Farm arrives at this amount by subtracting the following setoffs from the $250,000 limits of the underinsured motorist provisions of its policy: the $100,000 settlement Katz received from the underlying action and the $47,654.08 in workers' compensation benefits Katz received.

¶ 25    Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2008). This court has held that "construction of an insurance policy provision is a question of law that can be properly decided on a motion for summary judgment." *Jones v. Country Mutual Insurance Co.*, 371 Ill. App. 3d 1096, 1098 (2007). We review summary judgment rulings *de novo*. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995).

¶ 26    When reviewing an insurance policy, we utilize principles of contract interpretation because an insurance policy is a contract. *Jones*, 371 Ill. App. 3d at 1098. We must therefore "determine and give effect to the intent of the parties, as expressed in the policy language." *Id.* Ambiguous language in an insurance policy that limits an insurer's liability will be construed in favor of the insured; whereas unambiguous language, unless it conflicts with public policy, will be applied as written. *Id.* at 1098-99.

¶ 27    The Insurance Code defines an underinsured motor vehicle as follows:

"[T]he term 'underinsured motor vehicle' means a motor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured, as defined in the policy, and for which the sum of the limits of liability under all bodily injury liability insurance policies or under bonds or other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle, is less than the limits for underinsured coverage provided the insured as defined in the policy at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured vehicle." 215 ILCS 5/143a-2(4) (West 2008).

The legislative purpose behind underinsured motorist coverage is to " 'place the insured in the same position he would have occupied if the tortfeasor had carried adequate insurance.' " *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 57 (2011) (quoting *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 555 (1992)).

¶ 28    In this case, Sentry's policy defines an underinsured vehicle as a vehicle "for which the sum of all liability bonds or policies at the time of the 'accident' provides at least the

amounts required by the applicable law *** but their limits are less than the limit of this coverage."

¶ 29    According to the definition of underinsured motorist in Sentry's policy, Belt, the tortfeasor, cannot be considered an underinsured motorist because his primary liability policy limit of $100,000 is greater than the $50,000 limit of coverage provided by Sentry under the underinsured motor vehicle provision of its policy. Katz has not argued, nor do we hold, that the language in the Sentry policy is ambiguous. We must apply insurance provisions as written where the language in such a provision is unambiguous. *Jones*, 371 Ill. App. 3d at 1098. As written, the Sentry policy provisions addressing underinsured motorist coverage exclude Belt as an underinsured motorist.

¶ 30    Most importantly, the definition of underinsured motorist in Sentry's policy is consistent with the definition of an underinsured motor vehicle under section 143a-2(4) of the Insurance Code. Section 143a-2(4) of the Insurance Code defines an underinsured motor vehicle as one "for which the sum of the limits of liability under all bodily injury liability insurance policies *** applicable to the driver *** legally responsible for such vehicle and applicable to the vehicle, is less than the limits for underinsured coverage provided the insured as defined in the policy at the time of the accident." 215 ILCS 5/143a-2(4) (West 2008). Under the Insurance Code, Belt is also not considered an underinsured motorist because the $100,000 primary liability limit of his vehicle is greater than the $50,000 underinsured motorist benefit limit contained in the Sentry policy.

¶ 31    We disagree with Katz's characterization of State Farm as the "excess underinsurer" because the Sentry policy, which Katz believes is the primary underinsurer, does not apply in this case. State Farm cannot be considered to be providing excess coverage where it is the only coverage. See *Mid-Century Insurance Exchange v. State Farm Mutual Automobile Insurance Co.*, 98 Ill. App. 3d 493, 495-96 (1981) ("Excess clauses are only applicable where there is other primary coverage available."). We hold that State Farm's policy provides the only underinsurance coverage in this case because Belt, the tortfeasor, does not meet the definition of an underinsured motorist under either the Sentry policy or section 143a-2(4) of the Insurance Code. Katz's reliance on the provisions of the State Farm policy titled, "If There Is Other Underinsured Motor Vehicle Coverage" is misplaced because there is not any other underinsured motor vehicle coverage, only the State Farm policy. The record discloses that Sentry paid Katz $2,345.92 after allegedly applying a setoff for Katz's workers' compensation benefits. However, State Farm's obligations under the policy it issued to Katz are not determined by Sentry's actions, but rather the terms of the respective policies and the Insurance Code apply. State Farm is not an excess underinsurer; rather, it is the only underinsurer. As the only provider of underinsurance coverage, State Farm is entitled to apply any applicable setoffs regardless of Sentry's actions.

¶ 32    Next, we must decide whether the circuit court calculated the proper setoffs to the underinsured motorist coverage provided Katz by State Farm. State Farm argues that it is entitled to a $100,000 setoff, which represents the primary liability limits of Belt's policy with State Farm that was tendered to Katz in settlement of the underlying action. State Farm's policy issued to Katz contains the provision "[t]he most we will pay any one insured is the lesser of: *** the amount which the 'each person' limit of this coverage exceeds the

-9-

sum of the 'each person' limits of all bodily injury liability insurance coverages that apply to the accident." Under this provision, State Farm is entitled to set off $100,000, which represents the settlement of the underlying action with Belt and tendered to Katz, from the $250,000 coverage limit contained in the policy it issued to Katz.

¶ 33 Katz argues that State Farm cannot set off $40,000 of the $100,000 settlement that was tendered to him from Belt because $40,000 of the settlement was allocated to his spouse for her loss of consortium. We must look to the language in State Farm's policy to determine whether a loss of consortium claim is a separate injury. *Berutti v. State Farm Mutual Automobile Insurance Co.*, 288 Ill. App. 3d 997, 1000 (1997). In this case, State Farm's policy contains the following provisions: " '***Bodily injury*** to one person' includes all injury and damages to others resulting from this ***bodily injury***," and that "[t]he limits of liability are not increased because *** more than one ***person*** is insured at the time of the accident." (Emphases in original.) In *Berutti v. State Farm Mutual Automobile Insurance Co.*, this court held identical policy language "unambiguously limit defendant's liability to the per-person limitation rather than the per-occurrence limitation." *Id.* at 1001. The plaintiff's loss of consortium claim in *Berutti* was therefore not a separate injury outside of the per-person limits of the policy. *Id.*

¶ 34 As in *Berutti*, we hold that the language contained in the State Farm policy is not ambiguous. Under the State Farm policy, the loss of consortium claim is one that results from Katz's injury and therefore a bodily injury to one person under the policy. See *Martin v. Illinois Farmers Insurance*, 318 Ill. App. 3d 751, 763 (2000) ("loss of consortium is a derivative claim to the direct injury that causes it and, as a result, is generally included and subject to the policy limitations for bodily injury to one person"); *Schweighart v. Standard Mutual Insurance Co.*, 227 Ill. App. 3d 249, 253 (1992). The loss of consortium claim derived from Katz's bodily injury is subject to the per-person limitations under the terms of State Farm's policy. The State Farm policy provides that "[t]he most we will pay any one insured is the lesser of: *** the amount which the 'each person' limits of all bodily injury liability insurance coverages that apply to the accident." Under this provision, the entire $100,000 settlement from the Belt policy, which includes the $40,000 allocated to Katz's spouse for loss of consortium, is set off from the $250,000 underinsured motorist benefits limit contained in the State Farm policy issued to Katz. The loss of consortium claim is not a separate injury under the policy, and the circuit court did not err when it included it as a set-off to Katz's underinsured motorist benefits.

¶ 35 State Farm also argues that it is entitled to set off $47,654.08 for Katz's workers' compensation benefit. Katz does not dispute that a $47,654.08 workers' compensation benefit setoff is available, but claims only Sentry can utilize it. As shown above, the Sentry policy is not applicable in this case. State Farm's policy provides that "[a]ny amount paid or payable to or for the insured under any workers' compensation *** shall reduce the amount payable under this coverage." (Emphasis omitted.) We do not hold, nor does Katz argue, that this language is ambiguous. We must apply unambiguous language as written. *Jones*, 371 Ill. App. 3d at 1098. The language of State Farm's policy allows for a setoff for workers' compensation benefits. We agree with the circuit court that State Farm is entitled to a $47,654.08 setoff for workers' compensation.

¶ 36    Based on our conclusion that State Farm does not owe any additional benefits, Katz's final argument, that State Farm's conduct in denying his claim for an additional $88,124 in underinsured motorist benefits was unreasonable and vexatious such that he is entitled to damages under section 155 of the Insurance Code (215 ILCS 5/155 (West 2008)) is without merit. See *Martin*, 318 Ill. App. 3d at 764 ("a defendant cannot be liable for section 155 relief where no benefits are owed").

¶ 37                                         CONCLUSION

¶ 38    The judgment of the circuit court is affirmed.

¶ 39    Affirmed.