In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1816

DENNIS NOREM, M.D.,

*Plaintiff-Appellant,*

*v.*

LINCOLN BENEFIT LIFE CO.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 10 CV 02233 — **Philip G. Reinhard**, *Judge.*

ARGUED OCTOBER 22, 2012 — DECIDED DECEMBER 13, 2013

Before BAUER and ROVNER, *Circuit Judges* and RANDA,
*District Judge.*[*]

ROVNER, *Circuit Judge.* Dennis Norem, M.D., is the current
owner of a variable life insurance policy issued by Lincoln
Benefit Life Company. Dr. Norem filed this putative class
action on behalf of himself and other similarly situated

_____

[*] The Honorable Rudolph T. Randa, United States District Court for the
Eastern District of Wisconsin, sitting by designation.

policyholders. Specifically, Dr. Norem claimed that Lincoln Benefit breached the terms of its insurance policies with him and other policyholders in its method of calculating what is known as the cost of insurance ("COI") rate on its policies. Before deciding the issue of class certification,[1] the district court granted summary judgment to Lincoln Benefit after concluding that its calculation of COI rates did not breach Dr. Norem's contract. Dr. Norem appeals, and we affirm.

**I.**

In 1994, Dr. Norem purchased a "Flexible Premium Variable Life Insurance Policy" from Lincoln Benefit. Unlike a term life insurance policy, which provides benefits only for a finite period while premiums are being paid, a universal life policy is a form of permanent insurance intended to provide protection for the life of the insured. *Variable* universal life insurance policies combine the premium flexibility of universal life insurance with the investment flexibility of variable life insurance. With variable life insurance, a portion of the premium is allocated to the insurer's investment funds, called subaccounts. Policyholders may move their investments within

---

[1] Neither party raises the issue of class certification on appeal. Thus we need not address the propriety of the district court's decision to grant Lincoln Benefit's motion for summary judgment before issuing a ruling on class certification. *See Wiesmueller v. Kosobucki*, 513 F.3d 784, 787 (7th Cir. 2008) (noting that in certain circumstances a district court may "dismiss a case on summary judgment without first ruling on the plaintiff's motion to certify a class" (*citing Cowan v. Bank United of Texas, FSB*, 70 F.3d 937, 941 (7th Cir. 1995) (recognizing defense "tactic" of moving for summary judgment before district court decides whether to certify suit as a class action)).

the subaccounts and the policy's death benefit, which is guaranteed not to fall below a certain amount. With variable universal life, the policyholder may easily invest and alter insurance coverage. The policy is comprised of the policy value, which represents the investment component, and its net amount at risk, which represents the insurance component. Dr. Norem purchased his variable universal life policy because he wanted both life insurance and an investment vehicle for the proceeds from the sale of his ownership interest in a medical business.

Although Dr. Norem's policy specifies several periodic charges owed by a policyholder, only one is relevant here—the COI charge, which is deducted monthly from the policy. The description of the COI charge appears in a section of the policy along with other charges, such as a premium charge, an annual administrative expense charge, and an annualized "risk charge." This section of Dr. Norem's policy, entitled "Policy Value," contains an explanation of how the COI rate is calculated. The COI *rate* is calculated first by the insurer and then multiplied by the policy's "net amount at risk" to arrive at the ultimate COI *charge.* As relevant here, the policy states that: "The cost of insurance rate is based on the insured's sex, issue age, policy year, and payment class. The rates will be determined by us, but they will never be more than the guaranteed rates shown on Page 5."[2]

---

[2] The cost of insurance clause states in its entirety: "1. Divide the death benefit as of the prior monthly deduction day by 1.003273739[;] 2. Subtract the policy value as of that prior monthly deduction day less the policy fee

(continued...)

Dr. Norem brought this putative class action suit alleging breach of contract based on the express terms of this COI rate clause. He alleges that Lincoln Benefit contravenes the terms of the policy because it considers factors beyond the insured's sex, issue age, policy year, and payment class when it calculates the COI rates. Lincoln Benefit concedes it considers a number of factors beyond those listed when setting its COI rates. Among other things, Lincoln Benefit considers expected policy lapse rates, agent commissions, and anticipated death benefit costs. Notwithstanding these other considerations, Lincoln Benefit maintained that the COI rate was "based on" the enumerated factors so long as those factors taken together made up a significant portion of the COI rate calculation—in short, that by limiting Lincoln Benefit solely to the enumerated factors Dr. Norem was reading into the contract a nonexistent guarantee that the COI rates would be based *exclusively* on sex, issue age, policy year, and payment class. The district court agreed, and granted summary judgment to Lincoln Benefit. The court noted that under Illinois law, undefined contract terms should be given their ordinary meaning. Using the ordinary dictionary definition of the verb "base" or "based," the court concluded that as long as the insured's sex, issue age, policy year, and payment class were principal components of the COI rate, they need not be the exclusive factors used to set

---

[2] (...continued)
and less the cost of insurance of any benefit riders attached to this policy; 3. Multiply the results by the current cost of insurance rate divided by 1,000. The cost of insurance rate is based on the insured's sex, issue age, policy year, and payment class. The rates will be determined by us, but they will never be more than the guaranteed rates shown on Page 5."

the rates. The district court further emphasized that Lincoln Benefit had never exceeded the guaranteed rates in the contract, which served as a limit on its discretion in calculating the COI rate. Dr. Norem appeals.

## II.

The sole issue on appeal is whether the policy allows Lincoln Benefit to include factors beyond an insured's sex, issue age, policy year, and payment class when it calculates COI rates. It is uncontested that Lincoln Benefit incorporates a variety of components beyond those enumerated in the policy when it calculates the COI rate. Dr. Norem argues that these additional, undisclosed factors are used to inflate the COI rate, thereby increasing Lincoln Benefit's profit margin and decreasing the cash value of the policy. According to Dr. Norem, this practice breaches the COI rate clause.

We review de novo the district court's grant of summary judgment in favor of Lincoln Benefit, construing all facts and reasonable inferences in the light most favorable to Dr. Norem, the non-moving party. *E.g.*, *Nature Conservancy v. Wilder Corp.*, 656 F.3d 646, 648 (7th Cir. 2011); *see also CIMCO Commc'n, Inc. v. Nat'l Fire Ins. Co.*, 943 N.E.2d 276, 279 (Ill. App. Ct. 2011) (noting that construction of an insurance contract presents a question of law appropriate for disposition by summary judgment). The parties agree that Illinois law applies in this diversity suit. As the forum state, the choice of law principles of Illinois determine which state's substantive law governs the action. *See West Bend Mut. Ins. Co. v. Arbor Homes LLC*, 703 F.3d 1092, 1095 (7th Cir. 2013). Dr. Norem's policy contains a choice of law clause providing that it is subject to the laws of the state

where the application was signed—in this case, Illinois, where Dr. Norem continues to reside. *Cf. Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 251 (Ind. 2005) ("An insurance policy is governed by the law of the principal location of the insured risk during the term of the policy.").

A breach of contract under Illinois law requires a valid contract, performance by the plaintiff, breach by the defendant, and damages. *See Elson v. State Farm Fire & Cas. Co.*, 691 N.E.2d 807, 811 (Ill. App. Ct. 1998). Insurance contracts are interpreted under the same rules of construction applicable generally to contracts. *Cont'l Cas. Co. v. Donald T. Bertucci, Ltd.*, 926 N.E.2d 833, 839 (Ill. App. Ct. 2010). Words and phrases that are not defined in the policy are to be given their plain and ordinary meaning. *Id.*; *Klemp v. Hergott Group, Inc.*, 641 N.E.2d 957, 962 (Ill. App. Ct. 1994). Policy provisions that are reasonably susceptible to more than one meaning are considered ambiguous. Ambiguous provisions in the policy, especially those that exclude or limit coverage, will be construed against the insurer. *Katz v. State Farm Mut. Auto Ins. Co.*, 965 N.E.2d 636, 643 (Ill. App. Ct. 2012). However, a provision is not rendered ambiguous simply because the parties disagree over its meaning. *E.g.*, *West Bend Mut. Ins. Co. v. Talton*, 997 N.E.2d 784, 2013 WL 5437049, at *4 (Ill. App. Ct. Sept. 27, 2013) ("An ambiguity is not created merely because the parties disagree."). Nor is a provision ambiguous because the parties can suggest creative possibilities for its meaning. *See Midway Park Saver v. Sarco Putty Co.*, 976 N.E.2d 1063, 1069 (Ill. App. Ct. 2012) ("The reviewing court will not strain to find ambiguity where none exists, and disagreements as to the interpretation of a contract must be reasonable."); *Profitt v. OneBeacon Ins.*, 845 N.E.2d 715,

718–19 (Ill. App. Ct. 2006) (noting that creative possibilities may be suggested, but only reasonable interpretations will be considered).

Both Lincoln Benefit and Dr. Norem insist that the unambiguous language of the policy supports their respective positions. Several state and district courts have considered similar clauses in life insurance policies and reached divergent results. *Compare Yue v. Conseco Life Ins. Co.*, 282 F.R.D. 469, 481 (C.D. Cal. 2012) (rejecting insurer's claim that provision stating that a monthly COI rate was "based on" expected mortality rates as long as expected mortality rates constituted "one factor in determining COI rates") *with Thao v. Midland Nat'l Life Ins. Co.*, No. 09-C-1158, 2013 WL 119871, at *1-2 (E.D. Wis. Jan. 9, 2013) (insurer is not limited to considering five listed factors in provision stating that COI rate will be "based on the Issue Age, completed Policy Years, Sex, Specified Amount, and Premium Class of the Insured"), *aff'd*, Nos. 13-1272 & 13-2366, order (7th Cir. Dec. 13, 2013) (nonprecedential decision). And although at least one court to address the issue has concluded that these conflicting approaches render the "based on" provision ambiguous, *see Bezich v. Lincoln Nat'l Life Ins. Co.*, No. 12-1816/02C01-0906-PL-73, at 7 (Ind. Allen Cir. Ct. Jan. 14, 2013), we are not entirely convinced by this approach.

Because the policy fails to explicitly define the phrase "based on" as it is used in the COI rate clause, we begin with the plain and ordinary meaning of the phrase. *See Hess v. Kanoski & Assoc.*, 668 F.3d 446, 453 (7th Cir. 2012) ("Under Illinois law, undefined terms are generally given their 'plain, ordinary, and popular meaning' as found in dictionary definitions.") (quoting *Outboard Marine Corp. v. Liberty Mut.*

*Ins. Co.*, 607 N.E.2d 1204, 1215 (Ill. 1993)). As relevant here, the dictionary defines the word "base" as (1) "a main ingredient;" (2) "a supporting or carrying ingredient;" or (3) "the fundamental part of something." *Merriam-Webster's Collegiate Dictionary*, 101 (11th ed. 2007). Other definitions are in accord: (1) "Something on which a thing stands or by which it is supported;" or (2) "The principal ingredient, the fundamental element." *Shorter Oxford English Dictionary Vol. I*, 192 (6th ed. 2007). Most notably for our purposes, none of the definitions lends itself to Dr. Norem's proposed interpretation: that "base" or "based on" implies exclusivity. In other words, no one would suppose that a cake recipe "based on" flour, sugar, and eggs must be limited *only* to those ingredients. Thus, neither the dictionary definitions nor the common understanding of the phrase "based on" suggest that Lincoln Benefit is prohibited from considering factors beyond sex, issue age, policy year, and payment class when calculating its COI rates.

This conclusion is buttressed by what we know of the COI rate calculation process. In support of its motion for summary judgment, Lincoln Benefit submitted a declaration by Dean Way, its Associate Vice President and Illustration Actuary. As Way's declaration explains, there is no formula or method set forth in the policy for calculating COI rates because Lincoln Benefit considers numerous factors when setting the COI rate scales (a practice that is standard in the insurance industry). Specifically, Lincoln Benefit's actuaries test different pricing scenarios, the specifics of which are proprietary in nature and are not disclosed to policyholders or the public at large. Critically for our analysis, however, is the fact that the characteristics enumerated in the policy itself—sex, issue age, policy

year, and payment class—are precisely those characteristics that demonstrate how a COI rate is likely to vary from one individual policyholder to the next. Thus, it is logical that the policy spells out these factors for the policyholder so that he might have a sense of which factors unique to him will affect his ultimate COI rate.

When Dr. Norem purchased his policy in 1994, he was shown an illustration demonstrating how his policy would perform given different COI rate assumptions. His policy also included the table of "guaranteed maximum rates" referenced in the COI rate clause (stating that "[t]he rates will be determined by us, but they will never be more than the guaranteed rates shown on Page 5"). It is undisputed that Dr. Norem's COI rates have remained unchanged and have also never exceeded these guaranteed maximums. It is also undisputed that the guaranteed maximum rates are taken directly from an industry standard actuarial table called the 1980 Commissioners Standard Ordinary Mortality table. Presumably, these guaranteed rates are "based on" mortality, given that they are approved by regulators for use in actuarial reserving. This is relevant because Dr. Norem insists that the COI charge is intended to compensate Lincoln Benefit for its anticipated mortality costs, and that Lincoln Benefit inflates the charge to include factors beyond mortality. But this argument collapses when one considers the relationship between Dr. Norem's COI rate and the guaranteed maximum rates. No one disputes that the guaranteed maximum rates in the 1980 CSO table are "based on" mortality. It is thus difficult to characterize his COI rate, which is *less* than the guaranteed rate in the 1980 CSO

table, as an inflated figure over and above what he identifies as "mortality experience."

Dr. Norem also attacks Lincoln Benefit's interpretation of the COI rate clause as running afoul of numerous rules of contract interpretation, but none of his claims persuade us that the interpretation urged by Lincoln Benefit is erroneous. For example, Dr. Norem attacks Lincoln Benefit's reading of "based on" as violating the presumption against writing terms into a contract that could have easily been included but were not. *See Pritchett v. Asbestos Claims Mgmnt. Corp.*, 773 N.E.2d 1277, 1283 (Ill. App. Ct. 2002) ("[A] presumption exists 'against provisions that easily could have been included in the contract but were not.'") (quoting *Klemp*, 641 N.E.2d at 962). But application of this rule in fact favors Lincoln Benefit, not Dr. Norem. This is because it is *Dr. Norem's* interpretation that requires the insertion of an additional term. Essentially, he would have the COI provision state that the rate "will be based *exclusively* or *solely* on sex, issue age, policy year, and payment class." But nowhere does the policy specify that these listed considerations are the sole or exclusive components of the COI rate. *See Coffman v. Pruco Life Ins. Co.*, No. 10-CV-03663, 2011 WL 4550152 at *3 (D.N.J. Sept. 29, 2011) (noting that "ironically" plaintiff seeking to limit insurer to considering solely expected cost of mortality when calculating COI rate was herself guilty of wanting court to rewrite policy by inserting word "only" into expected cost of mortality). If Lincoln Benefit had intended the phrase "based on" to be so limiting, it could certainly have phrased the contract accordingly.

Nor are we persuaded by Dr. Norem's argument that *Lee v. Allstate Life Ins. Co.*, 838 N.E.2d 15 (Ill. App. Ct. 2005), requires

a different result. *Lee* was an interlocutory appeal from the circuit court's certification of a class of universal life policyholders alleging that Allstate unlawfully raised their COI charges to increase profits and improperly recoup deferred acquisition charges on other life insurance products. *Id.* at 18. Specifically, the court assessed whether a COI policy provision similar to that found in Dr. Norem's policy was ambiguous because each party advanced a different reading of it (the policy stated that COI rates would be "based on the insured's sex, attained age, and payment class"). In assessing Allstate's argument that it should be allowed to offer extrinsic evidence, the court summarized the parties' positions as follows:

> Allstate asserts that the COI rates may also depend on expenses, taxes, and profits. Plaintiffs would argue that, if Allstate wanted to include such items in calculating its COI rates, the policy language could have said so in a straightforward manner. However, a presumption exists 'against provisions that easily could have been included in the contract but were not.' A contract does not become ambiguous just because the parties do not agree on its meaning. It is clear that, contrary to Allstate's arguments, no party to this litigation claims that an ambiguity exists, as each party asserts that the policy language clearly and unambiguously mandates that party's desired result.

*Id.* at 24 (internal citations omitted).

This passage is not as persuasive as Dr. Norem suggests for several reasons. First, as the district court here recognized, the

quoted section is most reasonably read as a recitation of the plaintiff's arguments, not a conclusion by the *Lee* court that Allstate was forbidden to include expenses, taxes, and profits in its COI rate calculation. Second, the *Lee* court was addressing on appeal the limited issue of class certification—specifically whether class certification was inappropriate because determining the meaning of the COI provision would require extrinsic evidence. *Id.* at 23–24. As such, *Lee* is not a decision on the merits that illuminates whether Illinois courts would read the "based on" language in Dr. Norem's policy as limiting Lincoln Benefit to considering only the factors listed in the COI provision. *See Chultem v. Ticor Title Ins. Co.*, 927 N.E.2d 289, 298 (Ill. App. Ct. 2010) (issues going to "merits of the underlying actions" inappropriate for consideration when determining propriety of class certification); *Cruz v. Unilock Chicago*, 892 N.E.2d 78, 91–92 (Ill. App. Ct. 2008) (when analyzing question of class certification court assumes merits of plaintiff's claim and inquires only whether claim itself satisfies requirements for certification).

Dr. Norem also claims that allowing Lincoln Benefit to consider factors beyond those listed renders the entire COI clause meaningless. Specifically, he asserts that the COI rate clause must be read as incorporating two distinct limitations on Lincoln Benefit's rate-setting authority: first, a requirement that the COI rate be based only on sex, issue age, policy year, and payment class, and second, a requirement that it not exceed the guaranteed maximum rates. Dr. Norem argues that allowing Lincoln Benefit to consider factors beyond those enumerated would erroneously conflate these two limitations into a single prohibition against exceeding the guaranteed

maximum rates. But this argument is fundamentally flawed because Dr. Norem fails to adduce any evidence that the contested "based on" provision is in fact intended to serve as an independent limitation on rate-setting authority. As discussed above, the provision is most reasonably read as a *description* of those components of the COI rate relevant to an individual insured. This conclusion is buttressed by the sentence immediately after the "based on" clause, which states that, "*The rates will be determined by us* but they will never be more than the guaranteed rates shown on Page 5." (Emphasis supplied.) This sentence makes clear that Lincoln Benefit will utilize its own formula to determine the rates, subject to the limitation that they cannot exceed the guaranteed maximum rates. *See Baymiller v. Guar. Mut. Life Co.*, No. SA CV 99-1566 DOC AN, 2000 WL 1026565, at *2 (C.D. Cal. May 3, 2000) (explicit statement that COI rates will remain below guaranteed rates gives insurer discretion to use reasonable formula and does not limit insurer to considering only insured's sex, age, and rating class). Thus, far from reading the "based on" provision out of the contract, interpreting it as informational gives meaning to the provision as a whole.

Beyond his own contention that "based on" must be a limiting phrase defining the universe of considerations for the COI rate, Dr. Norem offers no evidence that such an interpretation is necessary or even reasonable. Notably, he provides no evidence as to what a rate based solely on the listed factors would even look like, and whether it would indeed be less than both the guaranteed rate and his current COI rate. It is unsurprising that he offers no such calculations; according to Lincoln Benefit, it is impossible to generate a numerical COI

rate based *solely* on an individual's sex, issue age, policy year, and payment class without some sort of mathematical formula or underlying data and assumptions. This impossibility further buttresses our conclusion that, contrary to Dr. Norem's assertion, the phrase "based on" does not amount to an express limitation on the components that make up the COI rate. Instead, the only express limitation is found in the explicit guarantee that the COI rates never be more than the listed maximum rates. In short, the rate provision is more reasonably read as containing two parts: first, an explanatory clause listing key components of the COI rate; and second, a guaranteed rate that allows a policyholder to see the maximum COI charge that could be deducted from his policy value. This would be a different case entirely if Dr. Norem had some evidence that Lincoln Benefit actually did not consider sex, issue age, policy year, and payment class as part of its rate-setting process. But he wants them to be *exclusive* elements, and the policy simply does not say that.

Nor do we think this reading of the policy somehow eviscerates purported policy limitations on other listed charges, which include a "premium charge," a "monthly deduction," an "annual administrative expense charge," and an annualized "risk charge." Dr. Norem argues that if Lincoln Benefit is allowed to factor these listed expenses into the COI charge, it will amount to "double-dipping," in violation of what he reads as a promise that each listed charge correspond with a particular expense. But this argument fails for the simple reason that the policy does not in fact tether certain expenses to the specific listed charges within the policy. Although the explanation of the "risk charge" refers generally

to Lincoln Benefit's "assumption of certain mortality and expense risks," none of the other charges say anything about what expenses they are intended to cover. Dr. Norem's own expert recognized as much, testifying in his deposition that "policy pricing is viewed as a whole" and that although "certain efforts" are made "to match expenses within the cost structure of a universal life, such matching is generally not absolute." *See also Thao*, 2013 WL 119871 at *3 (rejecting plaintiff's attempt to tether each separately identified charge in universal life policy to specific internal expenses and costs of insurer). There is thus no reason to believe that the COI rate must exclusively cover what Dr. Norem identifies broadly as a "mortality cost" or that Lincoln Benefit is prohibited from considering factors such as its administrative expenses or its need to make a profit when calculating its COI rates.

We have carefully considered the cases Dr. Norem cites to the contrary, which he characterizes as "overwhelmingly" holding that undisclosed factors may not be included in the COI rate calculation. Between the different procedural postures (as with *Lee*, *supra*) and other differences discussed below, we are ultimately unpersuaded by these cases, none of which are binding authority. For instance, in *In Re Conseco Life Ins. Co.*, 920 F. Supp.2d 1050 (N.D. Cal. 2013), the district court denied summary judgment to the insurer, Conseco Life, on a claim by a class of insureds alleging that certain increases to COI charges breached their policies, *id.* at 1061–62. Specifically, the plaintiff class maintained that the insurance contracts tied COI charges to mortality rates, and because mortality rates had decreased, the increased COI charges violated the policies. *Id.* at 1059. The district court agreed, concluding that the term

"cost of insurance" itself was tied to mortality when the COI provision stated that the "monthly cost of insurance rates, and any change in the monthly cost of insurance as provided herein, are and will be determined on a uniform basis for insured of the same age, sex and classification for all policies issued with like benefits and provisions." *Id.* at 1053. Given the evidence that Conseco had "vastly increased the COI rates … in the face of declining mortality rates," the court found summary judgment inappropriate because there remained disputed issues of fact as to whether these increases were "wholly divorced from mortality rates." *Id.* at 1062. Aside from the obvious difference that Lincoln Benefit has never raised Dr. Norem's COI rates, *Conseco* is not particularly helpful because the court neither considered the meaning of a COI provision stating rates would be "based on" certain factors, nor did it read the contract as limiting Conseco to considering *exclusively* mortality factors. Rather, it held simply that "cost of insurance" generally should not be "wholly divorced" from mortality. But Dr. Norem has not demonstrated, nor could he, that Lincoln Benefit's COI rates are utterly unrelated to mortality or to the four factors listed in the COI provision of his policy. Rather, he insists that the COI rate be based *exclusively* on those four factors, a guarantee that, as discussed above, does not appear in his policy.

Likewise, we are not persuaded by the rationale of the district court (also in California) in the companion cases of *Yue v. Conseco Life Ins. Co.*, No. CV 08-1506 AHM, 2011 WL 210943 (C.D. Cal. Jan. 19, 2011) ("*Yue I*") and *Yue v. Conseco Life Ins. Co.*, 282 F.R.D. 469 (C.D. Cal. 2012) ("*Yue II*"). Both cases dealt with a putative class action alleging breach of contract against

the insurer for raising COI rates under universal life policies providing that "[*c*]*urrent* monthly cost of insurance rates will be determined by the Company based on its expectation as to *future mortality experience*." *Yue I*, at *2 (emphasis in original). In *Yue I*, the court construed that language as limiting Conseco to considering only "mortality experience" and not factors such as policy lapse and persistence rates. *Id.*, at *8. In *Yue II*, the court reiterated this position when granting the plaintiffs a preliminary injunction preventing Conseco from implementing a COI rate increase. *Yue II*, 282 F.R.D. at 480–84. Much like the district court in *Conseco, supra*, the court found it unlikely that the insurer could prove that a COI rate was "based on" expected mortality experience when mortality rates had *decreased* and the COI rate was *increasing*. *Id.* at 481–82. Thus, using essentially the same dictionary definitions that we referenced above, the court rejected the contention that the increased COI rates were "based on" mortality given the inverse relationship plaintiffs had demonstrated between the expected mortality rates and the COI rate. *Id.* ("[I]f expected mortality rates decreased, there could not be an increase in COI rates if they were 'based on' expected mortality rates."); *see also id.* at 482 ("The policies state that COI rates would be 'based on' expected mortality rates. Instead, the COI rates in the above chart are clearly based on the amount of losses or profits to the insurer.") Although the court in *Yue II* did analyze the phrase "based on" and conclude broadly that it limited the insurer to making mortality experience a fundamental component of its COI rate, the court was not considering a provision like Dr. Norem's with a list of factors for the insurer's consideration. And, like in *Conseco*, the insured had shown that the COI

rate was in fact *increasing* when "mortality," which was explicitly given as the reference point for the COI rate, was *decreasing.* Dr. Norem's COI provision of course says nothing about "mortality experience" as the basis for the COI rate, nor has Dr. Norem proven some kind of inverse relationship between sex, issue age, policy year, and payment class and his actual COI charge. Yet another case cited by Dr. Norem, *Jeanes v. Allied Life Ins. Co.*, 168 F. Supp.2d 958, 974 (S.D. Iowa 2001), *rev'd in part on other grounds* 300 F.3d 938 (8th Cir. 2002), is distinguishable on similar grounds: a "based on" clause referring to "mortality experience" and a lawsuit focused on an *increase* in rates—in *Jeanes* allegedly as a means to maximize executive bonuses. Finally, we are not persuaded by *Bezich*, No. 12-1816/02C01-0906-PL-73, *supra*, which simply concludes without elaboration that the phrase "based on" is ambiguous and as such must be construed in favor of the insured. Without actually defining the phrase "based on," the court reasons that an ordinary policyholder would interpret the phrase as a limiting phrase that "limited the COI rate to mortality factors *only*." *Id.* at 7. No explanatory justification is given for this limitation, which does not in fact appear in the policy.

These cases imply that a for-profit life insurance company should not be allowed to make a profit on its COI rates. This approach, however, seems disconnected from the reality of insurance. Certainly no one expects that an auto or home insurer should make no profit on the premiums charged. Similarly, it is not unreasonable in a universal life insurance policy to consider profit as a secondary factor in calculating the COI rate, as no one is suggesting that Lincoln Benefit is not a for-profit entity. And as a more general matter, no one would

expect to be able to enter into a business contract in which the consideration covered only the cost of the services rendered and nothing more—yet this is what Dr. Norem is in essence proposing with his suggestion that the COI charge should be strictly limited to what he calls "mortality" expenses.

As should be obvious by now, we find the reasoning of the cases advanced by Lincoln Benefit more convincing. These cases hold generally that absent a promise to use a specific formula when calculating a COI rate, an insurer is not bound to consider *only* those factors listed in a COI provision. *See Thao*, 2013 WL 119871 at *2 (rejecting plaintiff's assertion that insurer must consider only factors listed in COI provision when setting its COI rates where the provision did not impose specific constraints on the process used to calculate rates); *Coffman*, 2011 WL 4550152, at *3-4 (policy deducting charge for "expected cost of mortality" allows insurer to exercise its discretion to charge less than maximum monthly rate and does not dictate what factors must be taken into account in making that determination); *Baymiller*, 2000 WL 1026565, at *2 (express language of insurance policies do not limit insurer to considering insured's "sex, age and rating class" where policies dictate no specific formula to calculate COI charges and promise only that rates will be below the guaranteed rates). This interpretation comports with the common understanding of the phrase "based on" and is also the most reasonable way to construe the language of the COI provision as a whole. *See Profitt*, 845 N.E.2d at 718–19 (rejecting plaintiff's claim of ambiguity and concluding that insurance policy declarations were subject to only one reasonable interpretation); *cf. Midway Park Saver*, 976 N.E.2d at 1072 (noting that if court reviews extrinsic evidence

and determines there is only one reasonable conclusion, the issue may be decided as a matter of law). Thus, Lincoln Benefit is entitled to summary judgment on Dr. Norem's claim that its method of calculating COI rates is in breach of the insurance policy.

III.

For the foregoing reasons, we AFFIRM the judgment of the district court.