NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 12, 2013
Decided December 13, 2013

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

THOMAS M. DURKIN, *District Judge*[*]

Nos. 13-1272 & 13-2366

| | |
|---|---|
| MAI NHIA THAO, | Appeals from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of |
| | Wisconsin. |
| *v.* | |
| | No. 2:09-cv-01158-LA |
| MIDLAND NATIONAL LIFE | |
| INSURANCE COMPANY, | Lynn Adelman, |
| *Defendant-Appellee.* | *Judge.* |

**O R D E R**

Mai Nhia Thao filed this diversity suit for breach of contract against Midland National Life Insurance Company ("Midland"), from which she purchased a universal life insurance policy. Thao contends that Midland has breached the terms of the policy in calculating the monthly cost of insurance charge she is assessed: The policy states

---

[*] Of the Northern District of Illinois, sitting by designation.

that the cost of insurance rate used to calculate that charge will be "based on" five specified factors, but in practice Midland considers other unnamed factors in arriving at that rate. The district court granted summary judgment to Midland, concluding that the policy's "based on" language did not limit the insurer to the five named factors in calculating the cost of insurance rate. *Thao v. Midland Nat'l Life Ins. Co.*, 2013 WL 119871 (E.D. Wis. Jan. 9, 2013). Along the way to that judgment, the court denied Thao's two motions for class certification, R. 46; *Thao v. Midland Nat'l Life Ins. Co.*, 2012 WL 1900114 (E.D. Wis. May 24, 2012), and separately denied her motion to compel production of Midland's mortality data and, because it found Thao's pursuit of the motion lacking substantial justification, awarded Midland its fees and costs in opposing the motion, *Thao v. Midland Nat'l Life Ins. Co.*, 2012 WL 2924047 (E.D. Wis. July 18, 2012). Thao appeals each of these three rulings. Without reaching the class certification issue, we affirm.

## I.

We turn first to the merits of Thao's breach-of-contract claim. That claim, as we have noted, turns on the meaning of the phrase "based on" as it is used in the insurance policy's description of how Midland will calculate the cost of insurance rate. The proper construction of that phrase presents a legal question as to which our review is *de novo*. *E.g.*, *Rexam Beverage Can Co. v. Bolger*, 620 F.3d 718, 724 (7th Cir. 2010).

Wisconsin law governs Thao's claim. As the Wisconsin Supreme Court has observed, "An insurance policy is a contract and is interpreted by the same rules governing contract construction." *Blum v. 1st Auto & Cas. Ins. Co.*, 786 N.W.2d 78, 83 (Wis. 2010). A court's primary objective in construing a contract is to determine and implement the intent of the parties. *E.g.*, *Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.*, 660 N.W.2d 666, 673 (Wis. 2003). We must give the policy terms their ordinary meaning, *e.g.*, *Tufail v. Midwest Hospitality, LLC*, 833 N.W.2d 586, 592 (Wis. 2013), that is, the meaning that a reasonable person in the position of the insured would give to those terms, *e.g.*, *Schinner v. Gundrum*, 833 N.W.2d 685, 703 (Wis. 2013).

Under the terms of the policy sold to Thao, she makes a monthly premium payment to Midland which, following a deduction for premium load, is deposited into a policy fund. Midland in turn makes a monthly deduction from the policy fund which is comprised of three separately-calculated charges: (1) an "Expense Amount," (2) the "Cost of Insurance," and (3) a "Rider Charge." Policy § 7.4, R. 1 at 31. It is the way in

which Midland determines the second of these charges, the cost of insurance, that forms the basis for Thao's breach-of-contract claim. Section 7.7 of Thao's policy provides:

> **COST OF INSURANCE RATES –** The monthly Cost of Insurance Rates … will never be more than those shown in the Table of Guaranteed Monthly Cost of Insurance Rates in the Schedule of Policy Benefits. We may declare Cost of Insurance Rates that differ from those shown in the Schedule of Policy Benefits. Cost of Insurance Rates are *based on* the Issue Age, completed Policy Years, Sex, Specified Amount, and Premium Class of the Insured.

R. 1 at 32 (emphasis supplied). Thao interprets the language indicating that the cost of insurance rates (which of course are used to determine the monthly cost of insurance charge) will be "based on" the five specified factors to mean that Midland will consider only these factors in determining the cost of insurance charge that she will be assessed.[1] In fact, Midland prepares rate tables that are organized around these factors (these factors define the rows and columns in the tables), and in this way the specified factors are used to determine which rate in the relevant table will be used for a particular insured. But the rates themselves—the numbers in each cell of a table—are derived from computer models that Midland's actuaries use to evaluate the anticipated costs and risks associated with the policies that Midland offers; and these models are based on a variety of factors other than the five factors named in section 7.7 which affect both the intended performance of a particular type of policy as well as Midland's ability to cover its costs and to make a profit. These factors include (a) the goals of a particular type of policy (accumulation of cash value, for example); (b) estimates of future conditions or events, including the distribution of insureds by age at the time of policy issue and underwriting class, the timing and amount of premium payments, return on Midland's investments, reserve requirements, capital requirements, lapse rates, surrender rates at different policy durations, taxes, administrative costs, and overhead costs; and (c) inputs specified by Midland to cover such costs as sales commission rates. Adjustments are also made, as various models are run, to account for Midland's profit goals and for the market competitiveness of rates in particular cells of a table. Thao contends that this process amounts to a violation of the policy's "based on" language,

---

[1] There is no suggestion that the rates as calculated exceed those set forth in the Table of Guaranteed Monthly Cost of Insurance Rates included in the Schedule of Policy Benefits.

because in fact Midland is basing the cost of insurance rate on factors other than those identified in the policy.

Our opinion today in *Norem v. Lincoln Benefit Life Co.*, No. 12-1816, slip op. (7th Cir. Dec. 13, 2013), resolves this issue. *Norem*, which involves policy language materially identical to that found in Midland's policy, holds that when the policy says that the monthly cost of insurance rate will be "based on" specified factors, it does not mean that the rate will be based exclusively on those factors. *Norem*, slip op at 7-8, 9-10, 12-13. Rather, it signifies that the named factors will have a significant, foundational role in determining the rate. *Id.* at 7-8.[2] And, in fact, they do. As mentioned, it is these factors around which the rate tables that Midland prepares are organized and it is these factors which identify the particular rate in a table that will apply to an individual insured. Put another way, it is these named factors which serve to both differentiate one insured from another and insure that similarly situated insureds will be treated alike in the amounts they are charged for the cost of insurance. By contrast, the other, unidentified factors that Midland considers in setting the cost of insurance rate have less to do with the characteristics of the individual insured and much more to do with the broader financial risks, performance, and goals of Midland's business as a for-profit life insurance company and with the type of policy the insured has chosen. When the policy states that the rate used to calculate the cost of insurance charge that will be assessed to the insured will be based on the five specified factors, it therefore accurately describes the way in which these named factors are essential in determining a particular insured's cost of insurance rate.

We add that this non-exclusive understanding of the term "based on" is consistent with section 7.8 of the Midland policy.

> **DECLARED RATES AND CHARGES** – We may declare Cost of Insurance Rates, Expense Amount, Premium Loads and Interest Rates that differ from those stated in the Policy. Changes in the Cost of Insurance Rates, Expense Amount, Premium Loads, and Interest Rates will be based upon changes in future expectations for such elements as investment earnings, mortality, persistency, and expenses. Changes in

---

[2] Although *Norem* applies Illinois law in construing the policy language, there is no material difference between Wisconsin law and Illinois law as to the basic rules of contract interpretation.

the declared Cost of Insurance Rates and Expense Amount will vary by
the Issue Age, Policy Anniversary, Sex, Specified Amount, and Premium
Class of the Insured.

R. 1 at 32. This language, beyond confirming Midland's authority to change the cost of
insurance rate, reinforces the points we have been making about the role of the
specified factors. By naming some of the other factors that changes in the cost of
insurance rate will be "based upon," section 7.8 makes clear that the factors identified in
section 7.7 are not the sole factors that affect calculation of the cost of insurance rate. At
the same time, section 7.8, in stating that changes in the cost of insurance rate will vary
with such factors as the issue age, sex, policy amount, and premium class of the
insured, reinforces the way in which the factors that differentiate one insured from
another play a determinative role in quantifying costs for an individual insured.

In short, the district court properly granted summary judgment to Midland on
Thao's breach of contract claim. For all of the reasons set forth in *Norem* and that we
have added here, the policy language did not limit Midland's calculation of the cost of
insurance rate to the factors expressly identified in section 7.7. To the extent that Thao
challenges the district court's denial of leave to amend her complaint in order to re-cast
her breach of contract claim, the challenge necessarily fails, as any amendment would
have been futile.

## II.

Thao has also challenged the district court's refusal to certify a class. In its
opinion denying the second of Thao's two motions for class certification, the court
acknowledged that there was a legal question common to all putative class
members—the meaning of the policy's "based on" language—but nonetheless
concluded that Thao did not have a claim that was common to all class members. The
court noted that although Thao's theory of how the cost of insurance rate should be
calculated would lower rates for policyholders in initial policy years, it would
potentially raise them for policyholders in later years; and many policyholders might
prefer to pay higher rates in early years in exchange for lower rates later in their lives.
Consequently, "the class that Thao seeks to represent does not comprise policyholders
with a common grievance against Midland." 2012 WL 1900114, at *10.

Although Thao has appealed the district court's adverse class-certification
decision, we assume that she intended her appeal on this point to be conditional on her

success on the merits of her breach of contract claim. Because Thao has lost on the merits, reversal of the district court's class certification decision would only work to the disadvantage of other class members. For its part, Midland has expressed no interest in class certification and instead has defended the district court's decision not to certify a class. The issue of class certification is therefore moot for all intents and purposes, and we need not address it. *See Brengettsy v. LTV Steel (Republic) Hourly Pension Plan*, 241 F.3d 609, 612 (7th Cir. 2001) (citing *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 881 (7th Cir. 2001), and *Amati v. City of Woodstock*, 176 F.3d 952, 957 (7th Cir. 1999)).

### III.

Finally, we turn to the district court's denial of Thao's motion to compel and the imposition of sanctions pursuant to Federal Rule of Civil Procedure 37(a)(5)(B). As we have noted, Thao sought to compel Midland to produce two categories of documents: (a) those reflecting Midland's mortality expectations, which it used in calculating cost of insurance rates; and (b) those showing Midland's actual, historical mortality experience. The district court denied the motion to compel, reasoning as to the first category that Midland had, as it contended, already produced to Thao its mortality expectations, 2012 WL 2924047, at *1, and reasoning as to the second category that Midland's historical mortality experience was irrelevant to the issues raised in the case and was unlikely to lead to the discovery of any material evidence, *id.*, at *2. Because the court found Thao's motion to compel was not substantially justified, it ordered Thao to compensate Midland for the costs it had incurred in opposing the motion, including its attorney fees. *Id.* We review both the denial of the motion to compel and the decision to impose Rule 37 sanctions for abuse of discretion. *See Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 784 (7th Cir. 2013) (denial of motion to compel); *Wellness Int'l Network, Ltd. v. Sharif*, 727 F.3d 751, 778-79 (7th Cir. 2013) (Rule 37 sanctions)(citing, *inter alia*, *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642, 96 S. Ct. 2778, 2780 (1976)).

The district court did not abuse its discretion here. What Thao principally sought by way of her motion to compel was documentation reflecting Midland's estimates of future death rates among particular groups of people over a given period of time; these estimated death rates are referred to as pricing-mortality rates. These rates naturally play a role in Midland's calculation of the cost of insurance rate. As Thao construed the life insurance policy, the mortality estimates, as correlated with the factors named in section 7.7, should exclusively determine the cost of insurance charge. She wanted Midland to produce its mortality estimates for purposes of showing that if these estimates were used to the exclusion of other, unnamed factors in determining the cost

of insurance rate, the rate charged to policyholders would be lower. The district court did not dispute the relevance of the estimates for this purpose, but instead concluded that Midland had already produced them to Thao. Thao's counsel asserted that they had not been produced, citing the district court's earlier observation that a column of figures labeled "Pricing Mortality," found in a set of Excel "COI Solver" spreadsheets that Midland's actuaries used to determine the cost of insurance rates resembled but did not match Midland's actual morality expectations; to that extent, the label in the spreadsheets was misleading. *See* 2012 WL 1900114, at *6 & n.7. However, the court found that Midland had separately produced, in addition to these spreadsheets, tables containing the company's actual pricing-mortality rates—in other words, rates reflecting its true mortality expectations. Thao's contention that Midland had not produced its mortality estimates thus was "based on either a misunderstanding or a deliberate distortion of the record." 2012 WL 2924047, at *1.

Thao's appeal fails to address the distinction that both Midland and the district court drew between the spreadsheets, which admittedly did not contain Midland's actual mortality estimates, and the pricing-mortality tables which did contain those estimates. She simply invokes, as she did below, the district court's observation that the column labeled "pricing mortality" in the spreadsheets did not actually reflect Midland's mortality estimates. This does not answer Midland's representation that, separately from the spreadsheets, it had already produced its actual mortality estimates, nor does it demonstrate error in the district court's finding that the estimates had been produced. Thao therefore gives us no reason to disturb the decision to deny her motion to compel.

As we have noted, Thao also asked the court to compel Midland to produce its historical mortality data. Thao has not meaningfully addressed the district court's finding that these data were irrelevant to the claim she was making in this case. She has therefore given us no reason to question the court's rationale in this regard. Nor has she demonstrated that her motion was "'justified to a degree that would satisfy a reasonable person,'" such that the district court clearly erred when it imposed Rule 37 sanctions. *See United States v. Pecore*, 664 F.3d 1125, 1137 (7th Cir. 2011) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S. Ct. 2541, 2550 (1988)).

For the sake of completeness, we note that apart from her challenge to the imposition of Rule 37 sanctions, Thao has not challenged the amount of the costs and fees that the court ultimately awarded to Midland. Because we find no abuse of

discretion in the district court's decision to impose sanctions, the award therefore stands.

**IV.**

For the foregoing reasons, we AFFIRM the grant of summary judgment to defendant-appellee Midland, the denial of plaintiff-appellant Thao's motion to compel, and the imposition of Rule 37 sanctions against Thao for pursuing the motion to compel.