[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13706
Non-Argument Calendar

_____

D.C. Docket No. 1:19-cv-21996-MGC


SLAM DUNK I, LLC,
on behalf of itself and all others similarly situated,

Plaintiff - Appellant,

versus

CONNECTICUT GENERAL LIFE INSURANCE COMPANY,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 22, 2021)

Before JILL PRYOR, LUCK, and LAGOA, Circuit Judges.

LAGOA, Circuit Judge:

Slam Dunk I, LLC, appeals the district court's order granting Connecticut General Life Insurance Company's motion to dismiss with prejudice. We are presented with a straightforward issue on appeal. Slam Dunk asserts that it stated a claim for breach of contract by alleging Connecticut General improperly increased cost-of-insurance rates, thereby increasing fees collected from its insureds. We disagree and affirm for the reasons that follow.

## I.    FACTUAL AND PROCEDURAL HISTORY

This case involves group universal life insurance ("GUL") policies. Several decades ago, Connecticut General issued GUL policies to employees of several companies, including Hyatt Corporation, Magellan Health Services, and Continental Airlines. In 2010, Slam Dunk, a life settlement company that purchases life insurance policies through the secondary market acquired twenty-two GUL polices issued to individuals by Connecticut General.

According to Slam Dunk, GUL policies are obtained voluntarily and paid for by an employee. GUL policies are also less expensive than what is typically available to an individual, permanent (in that they can be maintained even after an employee leaves his or her job), and feature a savings component. The savings component is the policy's "cash value," which consists of money held in trust by the insurer plus any money the policyholder contributes. When making such a contribution, the policyholder is guaranteed a minimum fixed interest rate.

2

The policyholder pays for a policy through deductions that Connecticut General makes each month from the policy's cash value. This deduction is calculated by using a set of cost-of-insurance ("COI") rates. Connecticut General selects the COI rate that best corresponds to the insured and then deducts the COI monthly charge from the GUL policy's cash value.

The GUL policies contain the following language about how Connecticut General calculates and may adjust the COI:

> The Monthly Cost of Insurance Rates are based on the Insured's Attained Age, the type of benefit, the Class of Insured and whether premiums for that Insured are paid directly to [Connecticut General] or through payroll deductions. The Monthly Cost of Insurance Rates are determined by [Connecticut General] based on its expectations as to future mortality experience. Adjustment in the Monthly Cost of Insurance Rates may be made by [Connecticut General] from time to time, but not more than once a year, and will apply to Insureds of the same class. Under no circumstance will the Monthly Cost of Insurance Rates for Life Insurance ever be greater than those shown in the Table of Guaranteed Maximum Life Insurance Rates. Such guaranteed maximum rates are based on the Commissioners 1980 Extended Term Table (age last birthday) and 4% effective annual interest.

The GUL policies therefore establish a variable COI rate that may increase or decrease based on several things, including: the policyholder's age, the type of benefit, the class of policyholder, whether premiums for the policyholder are paid directly to Connecticut General or through payroll deductions, and Connecticut General's expectations of the policyholder's "future mortality experience."

3

Regarding the last factor, as the policyholder's mortality experience improves or declines, Connecticut General may adjust the COI rate accordingly.

Slam Dunk brought this putative class action against Connecticut General, seeking to represent similarly situated policyholders whose monthly COI rates have been increased at least once since May 16, 2014. Because, as a general matter, advancements in medicine and science have improved life expectancy over time, Slam Dunk alleges that Connecticut General should have either reduced or at least not increased the COI rate. In its initial complaint, Slam Dunk asserted that this improving life expectancy trend triggered a contractual obligation for Connecticut to reduce the COI rate. Connecticut General moved to dismiss the initial complaint, and the district court granted that motion without prejudice, allowing Slam Dunk leave to file an amended complaint. Slam Dunk then amended its complaint, this time shifting its theory from faulting Connecticut General for not changing the COI rate to faulting Connecticut General for changing the rate, i.e., Slam Dunk alleges that, despite life expectancy improving, Connecticut General improperly increased the COI rate. According to Slam Dunk, because the COI rate is to be "based on" expectations of "future mortality experience," Connecticut General violated the GUL policies by increasing the COI rate.

Connecticut General again moved to dismiss Slam Dunk's action, arguing that Slam Dunk failed to state a plausible claim for breach of contract. On September

29, 2020, the district court dismissed Slam Dunk's amended complaint with prejudice, finding that the policies' plain language did not support Slam Dunk's allegations in its amended complaint. This appeal ensued.

## II.    STANDARD OF REVIEW

We review *de novo* an order dismissing a complaint for failure to state a claim with prejudice, *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016), "accepting the complaint's factual allegations as true and construing them in the light most favorable to the plaintiff." *United States v. Henco Holding Corp.*, 985 F.3d 1290, 1296 (11th Cir. 2021). In our review, we apply Florida law.[1]

## III.    ANALYSIS

On appeal, Slam Dunk argues that Connecticut General breached its contractual obligations that it would base COI rate adjustments on mortality expectations. Because mortality experiences across the board are improving, Slam

---

[1] Because this is a diversity case brought in a Florida district court, we apply Florida's choice-of-law rules. *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998) ("Federal courts sitting in diversity apply the forum state's choice-of-law rules."). Florida follows the rule of *lex loci contractus* in determining which law applies to a breach-of-contract claim. *Jemco, Inc. v. United Parcel Serv., Inc.*, 400 So. 2d 499, 501 (Fla. Dist. Ct. App. 1981). Under this theory, "in the absence of a contractual provision specifying the governing law, a contract . . . is governed by the law of the state in which the contract is made." *Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir. 1995) (footnote omitted). The GUL policies do not contain a choice of law provision. Slam Dunk's amended complaint is devoid of allegations identifying where the GUL policies were signed or executed, but does make passing reference to Connecticut General's breach of "one or more contracts in Florida by failing to perform acts required by its insurance contracts to be performed within Florida." Although this jurisdictional allegation does not provide us with information about where the contracts were made, neither party disputes that Florida law controls, and we therefore apply it to this matter.

Dunk argues that the language of the GUL policies prohibited Connecticut General from increasing the COI rate. [2]

Insurance policies are contracts. *See Lumbermens Mut. Cas. Co. v. August*, 530 So. 2d 293, 295 (Fla. 1988). A claim for breach of contract under Florida law requires three elements: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). As with any contract, courts "must interpret the policy in accordance with the plain meaning of the language used so as to give effect to the policy as it was written." *State Farm Mut. Auto. Ins. Co. v. Menendez*, 70 So. 3d 566, 569–70 (Fla. 2011) (quoting *Travelers Indem. Co. v. PCR Inc.*, 889 So. 2d 779, 785 (Fla. 2004)). "Furthermore, '[i]n construing a contract, the legal effect of its provisions should be determined from the words of the *entire contract*,' and that construction must give 'effect to *all* of the provisions of the contract.'" *Summitbridge Credit Invs. III, LLC v. Carlyle Beach, LLC*, 218 So. 3d 486, 489 (Fla. 4th DCA 2017) (alteration in original) (emphasis added) (quoting *Sugar Cane Growers Co-op. of Fla., Inc. v. Pinnock*, 735 So.2d 530, 535 (Fla. Dist. Ct. App. 1999)).

---

[2] We agree with Connecticut General that Slam Dunk abandoned the theory put forward in its initial complaint: that Connecticut General should have *reduced* the COI rate. Further, we also agree that Slam Dunk has abandoned its count for breach of the duty of good faith and fair dealing, as Slam Dunk fails to address the district court's dismissal of this count and makes no mention of it anywhere in its initial brief. Therefore, we affirm on this count without further comment. *See LaCourse v. PAE Worldwide Inc.*, 980 F.3d 1350, 1360 (11th Cir. 2020).

Accepting Slam Dunk's factual allegations as true and viewing them in the light most favorable to Slam Dunk, in order to state a cause of action for breach of contract, Connecticut General's duty to adjust the COI rate would have to be based exclusively on expectations of future mortality experience, and Connecticut General could not consider any other factors without breaching the GUL policies. This reading of the contract fails for two reasons.

First, Slam Dunk's interpretation ignores the other sentences of the GUL policies. The COI provision contained in each of the GUL policies consists of five sentences, but Slam Dunk's theory focuses only on the sentence that mentions future mortality experience as a basis for establishing the COI rate. The immediately preceding sentence, however, establishes that the COI rates are also based on "the Insured's Attained Age, the type of benefit, the Class of the Insured and whether premiums for that Insured are paid directly to [Connecticut General] or through payroll deductions."

We cannot accept a reading of the GUL policies that focuses only one sentence to the exclusion of all others. *See Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000) ("[I]n construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect."). The GUL policies' language establishes factors that Connecticut General must consider in a decision to adjust the COI rate: the policyholder's age,

7

the type of benefit, the class of policyholder, whether premiums for the policyholder are paid directly to Connecticut General or through payroll deductions, and the expectations of the policyholder's "future mortality experience." We must read the contract as a whole and cannot sever the single sentence highlighted by Slam Dunk from the remainder of the COI provision.

Second, Slam Dunk advances a reading of the COI provision that is contrary to its plain language by incorrectly reading exclusivity into the phrase "based on." For example, even if we were to disregard the preceding sentence and consider only the sentence of the COI provision that Slam Dunk highlights, Slam Dunk asks this Court to read the sentence as follows: "The Monthly Cost of Insurance Rates are determined by [Connecticut General] based ***only*** on its expectations as to future mortality experience"; or "based on its expectations as to future mortality experience ***and nothing else***." This runs afoul of basic principles of contract interpretation that courts do not add words to a contract. Indeed, '[t]he law [in Florida] is quite clear that courts may not rewrite, alter, or add to the terms of a written agreement between the parties and may not substitute their judgment for that of the parties in order to relieve one from an alleged hardship of an improvident bargain.." *See Int'l Expositions, Inc. v. City of Miami Beach*, 274 So. 2d 29, 30-31 (Fla. Dist. Ct. App. 1973). "Rather, it is a court's duty to enforce the contract as plainly written." *See*

*Okeechobee Resprts, L.L.C. v. E Z Cash Pawn, Inc.*, 145 So. 3d 989, 993 (Fla. Dist. Ct. App. 2014).

Our sister circuit in *Norem v. Lincoln Benefit Life Co.*, 737 F.3d 1145 (7th Cir. 2013), addressed the phrase "based on" in a case involving COI rates. In *Norem*, the policy at issue contained the following provision: "The cost of insurance rate is based on the insured's sex, issue age, policy year, and payment class. The rates will be determined by us, but they will never be more than the guaranteed rates shown on Page 5." *Id.* at 1147. The plaintiff brought a breach-of-contract class action, alleging that the insurer breached "the express terms" of the COI provision "because it considers factors beyond the insured's sex, issue age, policy year, and payment class when it calculates the COI rates." *Id.* at 1147–48. Because the insurer conceded it did, in fact, consider other factors, the plaintiff moved for summary judgment, arguing there was no genuine dispute that the insurer breached the policies. *Id.* at 1148. The Seventh Circuit looked to the plain and ordinary meaning of the phrase "based on" and concluded that none of the definitions supported Norem's proposed interpretation that "base" or "based on" implied exclusivity. *Id.* at 1149 (relying on the definition of "base" in the Merriam–Webster's Collegiate Dictionary and the Shorter Oxford English Dictionary). By way of example, the court explained that "no one would suppose that a cake recipe 'based on' flour, sugar, and eggs must be limited only to those ingredients." *Id.* at 1150. The court, therefore, concluded that

because the phrase "based on" was not exclusive the insurer was not "prohibited from considering factors beyond sex, issue age, policy year, and payment class when calculating its COI rates." *Id.*

We agree with *Norem*. Nothing about the plain and ordinary meaning of the phrase "based on" connotes exclusivity, and nothing about it implies the list that follows is exhaustive. And while we recognize there is some disagreement among state and district courts, *see Norem*, 737 F.3d at 1149 ("Several state and district courts have considered similar clauses in life insurance policies and reached divergent results."), we conclude that this interpretation is most consistent with Florida contract law. Indeed, here, the COI provision at issue in the GUL policies contains two separate sentences that both use the phrase "based on." Having been used twice to refer to different factors, the phrase "based on" cannot connote exclusivity without leading to an absurd or internally inconsistent result. We therefore decline to adopt Slam Dunk's proposed interpretation because to do so would rewrite the GUL policies.

We have considered the other arguments raised by Slam Dunk and find them unavailing. The district court read the COI provisions of the GUL policies according to their plain and ordinary meaning and properly dismissed the case.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal of Slam Dunk's claims.

**AFFIRMED.**