GERBER, J.
The former husband appeals from the circuit court’s non-final order granting the former wife’s motion for enforcement of the parties’ settlement stipulation. The former husband argues that the court erred in finding him in default of the settlement stipulation under both a contractual and a contempt theory. We agree and reverse.
*834 While married, the parties possessed a Florida home burdened by a mortgage naming both parties as borrowers. Ultimately, the parties ended their marriage by divorce in New York. The New York divorce order incorporated the parties’ settlement stipulation. The settlement stipulation provided that New York law would govern its terms. Regarding the Florida home, the settlement stipulation provided:
The parties jointly own ... [the Florida home]. The HUSBAND shall retain exclusive possession of the Florida Home and shall heretofore be responsible for paying all carrying charges on this property including the mortgage, taxes, and insurance.
No later than six (6) months after the date of the [notice of] entry of the judgment of divorce, the HUSBAND shall, by refinance or other means, transfer the mortgage liability solely to his name. The WIFE shall fully cooperate with any refinance or other efforts on the part of the HUSBAND to transfer mortgage liability to the HUSBAND’S name.
Upon the transfer of the mortgage liability for the Florida Home to the HUSBAND, the WIFE shall transfer her interest in the Florida Home to the HUSBAND.
Should the HUSBAND fail to make payments as required and further fail to transfer by refinance or other means, the mortgage liability from both parties to the HUSBAND, the HUSBAND shall indemnify the WIFE for any liabilities or losses resulting from his default. If the '■ HUSBAND defaults, then the WIFE shall provide written notice by certified mail to the HUSBAND to cure within Five (5) days of the notice. If HUSBAND fails to cure then WIFE has a right to bring an action for the sale of the Florida Home.
Eventually, the former wife registered the New York divorce order in Florida and filed her motion to enforce the settlement stipulation. She alleged that the former husband failed to remove her from liability for the Florida home’s mortgage within the settlement’s allotted time, and so he was in default. Accordingly, the former wife argued, “[t]he Former Husband should be compelled to complete refinancing of the Florida Home or otherwise liquidate the real property immediately.”
The former husband filed a memorandum of law in opposition. He argued that he was not in default of the settlement stipulation because the settlement provision regarding the Florida home used the conjunctive “and” when describing his obligations. Specifically, the former husband argued that for him to be in default, he had to: (1) fail to remove the former wife from liability under the mortgage; and (2) fail to make the necessary payments under the mortgage. According to the former husband, because he paid the mortgage, he could not be in default. The former husband also filed an affidavit detailing his numerous, yet unsuccessful, attempts at refinancing the Florida home.
The circuit court held a hearing on the former wife’s motion to enforce. At the end of the hearing, the court noted that “both sides agree the [Florida home] has not been refinanced, and it’s not been sold,” and “[s]o it’s really going to be what my interpretation of the [settlement] is without any additional facts.”
Later, the court entered a written order granting the former wife’s motion to enforce. The court found the settlement’s language regarding the Florida home was not ambiguous, and that the undisputed evidence showed that the former husband: (1) “has been paying all carrying charges on the property including the mortgage, taxes, and insurance”; and (2) has failed to *835 “relievef] the Wife from financial liability of the Florida home within the six (6) months called for in the agreement.” The court then held:
[T]he contract is clear on its face that in the event that the Husband does not by, refinance or other means, transfer the mortgage liability to his sole name within six (6) months after the entry of the Judgment of Divorce that he is in default of the agreement, and that the Wife is entitled to seek enforcement of the settlement agreement not only on a contractual theory but also upon a contempt theory inasmuch as the Judgment of Divorce provided that the parties were directed to comply with every legally enforceable term or provision of such stipulation of settlement.
The court then ordered the former husband to “come into compliance with the” settlement stipulation “by removing the Wife from any financial liability for” the Florida home within ten days of the court’s order.
This appeal followed. The former husband argues the circuit court erred in finding that he defaulted on , the settlement stipulation under both a contractual and a contempt theory. We agree.
On the contractual theory, the circuit court erroneously , interpreted the plain and ordinary meaning of the settlement stipulation as granting the former wife a contractual right to force a sale of the Florida home if the former husband was not able to remove her from the home’s mortgage in the settlement’s allotted time. See Rauso v. Rauso, 73 A.D.3d 888, 902 N.Y.S.2d 573, 574 (N.Y.App.Div.2010) (“[A] marital settlement is a contract ... and a court should interpret the contract in accordance with its plain and ordinary meaning.”) (brackets, citations, and quotations omitted). The settlement stipulation provided:
Should the HUSBAND fail to make payments as required and further fail to transfer by refinance or other means, the mortgage liability from both parties to the HUSBAND, the HUSBAND shall indemnify the WIFE for any liabilities or losses resulting from his default. If the HUSBAND defaults, then the WIFE shall provide written notice by certified mail to the HUSBAND to cure within Five (5) days of the notice. If HUSBAND fails to cure then WIFE has a right to bring an action for the sale of the Florida Home.
The plain and ordinary meaning of this provision is that the former wife’s ability to force a sale of the Florida home has two conditions precedent: (1) the former hus-' band fails to make mortgage payments; and (2) the former husband fails to remove the former wife from the mortgage. This is because the phrase “and further fail[s]” shows that the two conditions are linked, and both must occur. Additionally, as the former husband notes, the provision’s use of the phrase “default” plainly refers to the former husband failing to make a necessary mortgage payment, and not to removing the former wife from the mortgage. This can be seen by considering the provision’s indemnification requirement for the former husband in the event of a default. Such would be superfluous if the former husband had removed the former wife from the mortgage, because she would have no obligations under the mortgage. This reasoning appears to be confirmed by the fact that the notice and cure provisions are plainly read to allow the former husband to cure a default by bringing any delinquent mortgage payments up to date.
The above reasoning is further confirmed by considering what would occur if either condition were independently sufficient to trigger the former wife’s contrac *836 tual right to force a sale of the Florida home. Under such an interpretation, whenever the former husband fails to make a necessary payment under the mortgage and is unable to cure his default after sufficient notice, the former wife would have the ability to force the sale of the Florida home. This would hold even if the former husband had, pre-default, succeeded in removing the former wife from the mortgage and she had transferred her interests in the home to him. Such a result is clearly unreasonable, yet logically follows if each condition is independently sufficient to trigger the former wife’s contractual right to force a sale. Accordingly, such an interpretation should not be applied. See Reape v. N.Y. News, Inc., 122 A.D.2d 29, 504 N.Y.S.2d 469, 470 (N.Y.App.Div.1986) (“[Wjhere a particular interpretation would lead to an absurd result, the courts can reject such a construction in favor of one which would better accord with the reasonable expectations of the parties.”) (citations omitted).
On a contempt theory, the circuit court made no finding that the former husband willfully disregarded the New York divorce order. On the contrary, the record shows the former husband affirmatively attempted to comply with the New York divorce order by his numerous, yet unsuccessful, attempts at refinancing the Florida home. Thus, the circuit court’s order also must be reversed under a contempt theory. See Griffith v. Griffith, 941 So.2d 1285, 1286 (Fla. 4th DCA 2006) (“We reverse the order finding the former husband in contempt, because the undisputed evidence did not establish willful non-compliance with his support obligations under the Agreed Final Judgment.”); Rubin v. Rubin, 78 A.D.3d 812, 911 N.Y.S.2d 384, 386 (N.Y.App.Div.2010) (“To prevail on a motion to punish a party for civil contempt, the movant must demonstrate that the party charged with contempt willfully violated a clear and unequivocal mandate of a court’s order, with knowledge of that order’s terms, thereby prejudicing the movant’s rights.”) (citations omitted).

Reversed and remanded for further proceedings.

STEVENSON and CIKLIN, JJ., concur.