Damoorgian, J.
This appeal concerns a commercial foreclosure action which was initiated by Appellant, Summitbridge Credit Investments III, LLC (“Lender”), against Appellee, Carlyle Beach, LLC (“Borrower”), for failure to comply with financial covenants and timely pay property taxes.[1] Following a bench trial, the court entered final judgment in favor of Lender based on its findings that Borrower failed to remit certain required financial disclosures and did not timely pay the property taxes. Because the breaches were merely technical, however, the court denied Lender any relief on the grounds that foreclosure would be a harsh and inequitable remedy.
On appeal, Lender challenges the court’s findings and argues that: (1) the failure to remit financial disclosures was a material breach justifying foreclosure; (2) Borrower’s belated payment of the property taxes did not preclude foreclosure in this case; (3) the court erred in denying it essential discovery; and (4) the court misapplied equitable concepts in denying it relief on its non-equitable claims. Borrower cross-appeals and argues that: (1) Lender had no standing to initiate the foreclosure action; and (2) the court erred in finding that Borrower committed a technical breach as compliance with the financial covenants was not required at the time of the alleged breach. We affirm the trial court’s rulings challenged in Lender’s issues 2, 3, and 4, and Borrower’s cross-appeal issue 1, without further comment. For reasons discussed below, however, we agree with Borrower on its cross-appeal issue 2 and reverse and remand for entry of final judgment in its favor.
By way of background, Lender purchased Borrower’s commercial loan from the original lender in 2012. Prior to the purchase, there were a series of loan modifications between the original lender and Borrower. Relevant to this appeal is the final loan modification evidenced by a Loan Agreement dated May 27, 2008 (“Loan Agreement”). Section 7 of the Loan Agreement provided, inter alia, that Borrower was required to comply with a number of covenants “so long as credit is available under this Agreement and until the Bank is repaid in full.” Included amongst those different covenants was the requirement that Borrower provide periodic financial statements and related financial documents for both guarantors.
Shortly after purchasing the loan, Lender requested the financial reporting documentation as provided for in Section 7 of the Loan Agreement. Borrower did not comply, prompting Lender to file a foreclosure and breach of contract action against Borrower. At trial, Lender’s position was that Borrower was required to comply with the financial covenants listed in Section 7 of the Loan Agreement up and until the time the loan was paid in full, and that failure to comply with the financial covenants constituted a material breach justifying foreclosure.
*488 Borrower’s position, on the other hand, was that it could not be in breach for failure to remit certain financial documents under Section 7 of the Loan Agreement because the requirements in that section only applied “so long as credit is available.” In support of its argument, Borrower presented the testimony of guarantor Metropolitan Trucking’s owner and corporate representative which established the following. According to the representative, the entire purpose of the future advance mortgage was for Borrower to be able to draw additional funds in the future based on the needs of the company. The original lender accordingly provided Borrower with a commitment letter in 2008 which included a credit-line feature. It was Borrower’s understanding that after receiving the funds from the Loan Agreement, it also had the right to draw money on the credit-line. In May 2009, however, the original lender informed Borrower that the credit-line was no longer available. At no point after 2009 did the original lender ever request any financial documents from Borrower.
Attempting to reconcile the language in the Loan Agreement providing that Borrower was only required to comply with financial reporting “so long as credit is available,” Lender maintained that “credit” essentially meant “loan.” Notably, per the testimony of its own witnesses, at the time Lender requested the financial documents, no credit was available to Borrower under the Loan Agreement. In fact, as of 2009, no loan advances were available to Borrower under the Loan Agreement.
Following the bench trial, the court made the following relevant findings in connection with the issue before us. With regard to the applicability of Section 7 of the Loan Agreement, the court found that the clear and unambiguous language of that section, particularly the sentence providing that “Borrower agrees, so long as credit is available under this Agreement and until the Bank is repaid in full,” required the disclosure of financial information up and until the bank was repaid in full. In other words, the court implicitly found that the “so long as credit is available under this Agreement” and “until the Bank is repaid in full” conditions were one and the same. Therefore, because Borrower conceded at trial that it never provided Lender with the financial disclosures required under Section 7, the court found that Borrower defaulted on the Loan Agreement. However, the court also found “that a default on the Mortgage by [Borrower] was merely technical and not as a result of the [Borrower] deliberately failing to pay the monthly principal,” and that “[Lender] failed to prove that [Borrower’s] failure to comply with the terms of the Loan Agreement placed the security in jeopardy.” Based on the above findings, the trial court entered final judgment in favor of Lender but denied it any relief.
“ ‘The interpretation or construction of a contract that is clear and unambiguous is a matter of law that is reviewed de novo.’ Whether an ambiguity exists in a contract also is a question of law.” Smith v. Shelton, 970 So.2d 450, 451 (Fla. 4th DCA 2007) (quoting Lipton v. First Union Nat’l Bank, 944 So.2d 1256, 1258 (Fla. 4th DCA 2007)). It is well settled that “[i]n the absence of an ambiguity on the face of a contract, ... the actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of that language controls.” Acceleration Nat’l Serv. Corp. v. Brickell Fin, Servs. Motor Club, Inc., 541 So.2d 738, 739 (Fla. 3d DCA 1989); see also Boat Town U.S.A., Inc. v. Mercury Marine Div. of Brunswick Corp., 364 So.2d 15, 17 (Fla. 4th DCA 1978) (“It is the law in Florida that the language used in a contract is the best evidence of the intent and meaning of the parties.”).
*489 Furthermore, “[i]n construing a contract, the legal effect of its provisions should be determined from the words of the entire contract,” and that construction must give “effect to all of the provisions of the contract.” Sugar Cane Growers Co-op. of Fla., Inc. v. Pinnock, 735 So.2d 530, 535 (Fla. 4th DCA 1999) (holding that the trial court erred in construing a contract because the court’s construction ignored and left out- several words and phrases). This includes giving effect to conjunctions used in phrases. See McDonald v. Browne-McDonald, 125 So.3d 833, 835 (Fla. 4th DCA 2013) (holding that when the word “and” is placed between two conditions in a contract, it “shows that the two conditions are linked, and both must occur”); Buie v. Bluebird Landing Owner’s Ass’n, 172 So.3d 519, 521 (Fla. 1st DCA 2015) (disagreeing with the trial court’s intérpretation of a contract because the interpretation failed to give due effect to the word “and” which “is conjunctive and means that both conditions apply”).
In the present case, Section 7 of the Loan Agreement clearly and unambiguously provides that Borrower agrees to comply with the financial covenants listed in that section: “so long as credit is available under this Agreement and until the Bank is repaid in full.” The plain and ordinary meaning of this provision, including the use of the word “and,” makes clear that compliance with the financial covenants is required if two conditions are met: (1) there is credit available under the Loan Agreement; and (2) the loan has not yet been paid in full. See McDonald, 125 So.3d at 835; Buie, 172 So.3d at 521. It is undisputed that there was no credit available under the Loan Agreement at the time Lender requested the financial disclosures from Borrower.
In finding that the above provision required Borrower to comply with Section 7 s financial covenants until the loan was paid off, the trial court essentially equated the word “credit” as meaning the same thing as “debt.” This interpretation ignores not only the plain language meaning of the words “credit” and “debt” but also ignores the first condition of that provision. See Debt, Black’s Law Dictionary (10th ed. 2014) (defining the word “debt” as meaning “a specific sum of money due by agreement or otherwise” (emphasis added)); Credit, Black’s Law Dictionary (10th ed. 2014) (defining the word “credit” as meaning “[o]ne’s ability to borrow money” and '“[tjhe- availability of funds either from a financial institution o'r under a letter of credit” (emphases- added)); see also Pinnock, 735 So.2d at 535. It is -worth noting that even the Loaii Agreement does not treat the words “credit” and “debt”- the same. For example, Section 9 Of the Loan Agreement, which addresses defaults and remedies, -provides that in the event of default, the bank may “stop making any additional credit, available to the Borrower, and require the Borrower to repay its entire debt immediately.” .
We therefore hold that the phrase “credit is available” means' the availability of an ongoing line of credit. Accordingly, the trial court erred in interpreting Section 7 as requiring the disclosure of financial information up and until ¡the time the entire debt is repaid in full regardless of the availability of credit, and in finding that Borrower committed a technical breach of the Loan Agreement. We reverse the final judgment and remand for entry of a final judgment in favor of Borrower.

Affirmed in part, and reversed in part.

Gerber and Forst, JJ., concur.

. Appellees Teresa Cardenas and Metropolitan Trucking, Inc. guaranteed the subject loan.